ANDREW T. MERZ, Petitioner-Appellant, *v.* HERBERT H. VOLBERDING, SR., *et al.*, Respondents-Appellees.—(ANDREW T. MERZ, Petitioner-Appellant, *v.* JOHN E. SEITZ *et al.*, Respondents-Appellees; GEORGE D. EGAN, JR., Petitioner-Appellant, *v.* MUNICIPAL OFFICERS ELECTORAL BOARD, Respondents-Appellees.)

First District (1st Division)    No. 81-333

Opinion filed April 3, 1981.

1112

Andrew M. Raucci and Franklin J. Lunding, Jr., both of Chicago, for appellant Andrew T. Merz.

Burton S. Odelson, of Chicago, for appellant George D. Egan, Jr.

Marvin J. Glink, of Ancel, Glink, Diamond, Murphy & Cope, P. C., of Chicago, for appellees John R. Seitz and Bertha Rohrbach.

Michael Kreloff and Franklin S. Schwerin, both of Chicago, for appellee Herbert Volberding, Sr.

Mr. JUSTICE McGLOON delivered the opinion of the court:

The consolidated election of municipal officers for the City of Des Plaines is scheduled to take place on April 7, 1981. The candidates for the various offices filed their nominating petitions in a timely fashion. Shortly thereafter, petitioners challenged the right of three independent candidates to appear on the election ballot, claiming that the candidates' petitions did not contain the minimum number of signatures required by the Illinois Election Code.

The Des Plaines Municipal Officers Electoral Board ruled that the candidates' petitions did meet the statutory signature requirement. Three separate actions seeking review of the electoral board's ruling were filed in the circuit court of Cook County. The trial court affirmed the decision of the electoral board. Petitioners appeal.

The issues raised on appeal are: (1) whether the trial court and electoral board erred in determining that the number of persons who voted in the April 1979 aldermanic election should provide the numerical basis for determining the number of signatures required on the nominating petitions for the April 1981 election of city-wide officials; (2) whether the doctrine of estoppel necessitates a finding that the candidates' names should remain on the ballot; and (3) whether the candidates' names should remain on the ballot even though their nomination papers did not contain the statutorily required minimum number of signatures and even though there was no evidence of reliance.

The City of Des Plaines is divided into eight wards. There are two aldermen from each ward. Every two years, one alderman is elected from each ward to serve a four-year term. Every four years, the city elects a mayor, a city clerk and a treasurer. These officials each serve a four-year term.

Herbert Volberding (the incumbent mayor) and John Seitz filed independent nomination papers for the office of mayor of the City of Des Plaines. Bertha Rohrbach filed independent nomination papers for the office of village clerk of the City of Des Plaines. The three (jointly referred to as the candidates) sought to have their names placed on the ballot in the April 7, 1981, city-wide election. Each of the candidates' nomination papers contained more than 550 signatures and less than 610 signatures.

Andrew Merz filed timely objections to the nomination papers of candidates Volberding and Seitz. George Egan filed an objection to the nomination papers of candidate Rohrbach.

The Des Plaines Municipal Officers Electoral Board (the electoral board) convened on February 5, 1981, to consider the objections. Merz and Egan (jointly referred to as the objectors), in their objections, argued that section 10—3 of the Illinois Election Code requires that nominating papers contain signatures of voters equalling between 5% and 8% of the number of persons who voted in the 1977 city-wide election in Des Plaines. The number of persons who voted in that election was 15,550. The objectors, therefore, claimed that the candidates should have had between 778 and 1244 signatures to secure a position on the electoral ballot.

The electoral board first heard the Merz objections to Volberding's petition; second, it heard the Merz objections to Seitz' petition; and third, it heard the Egan objections to Rohrbach's petition.

Candidate Volberding introduced various exhibits and testified that he relied on an informational pamphlet distributed by candidate Rohrbach, the village clerk, to determine the number of signatures required. Candidates Seitz and Rohrbach adopted the exhibits from the Volberding case but introduced no additional evidence.

The electoral board overruled the objections of the objectors and thereby ordered the placement of the candidates' names on the April 7, 1981, ballot. On February 13, 1981, the trial court affirmed the electoral board's ruling. On February 25, 1981, the objectors filed an emergency motion for expedited appeal in this court.

Independent candidates seeking to have their names placed on an electoral ballot within any district or political subdivision less than the State must obtain the statutorily required number of signatures on their nomination papers. Section 10—3 of the Illinois Election Code provides:

"Nominations of independent candidates for public office within any district or political subdivision less than the State, may be made by nomination papers signed in the aggregate for each candidate by qualified voters of such district, or political subdivision, equaling not less than 5%, nor more than 8% (or 50 more than the minimum, whichever is greater) of the number of persons, who voted at the next preceding regular election in such district or political sub-division in which such district or political sub-division voted as a unit for the election of officers to serve its respective territorial area * * *." (Ill. Rev. Stat. 1979, ch. 46, par. 10—3 (as amended).)

The interpretation of this statutory provision is the subject of this appeal.

First, the objectors claim that in order to comply with the statutory signature requirement, candidates must have obtained signatures from a minimum of 5% of the number of persons who voted in the 1977 city-wide election.

In the 1977 city-wide election, a total of 15,550 persons voted, whereas in the 1979 aldermanic election only 7,626 voted. If the objectors' interpretation of the statute is correct, then the candidates failed to obtain the minimum number of signatures (5% of 15,550 or 778), and their names, therefore, technically should not appear on the ballot for the upcoming election. If the candidates' reading of the statute is correct, then they did meet the minimum statutory requirement (5% of 7,626 or 381), and their names should appear on the ballot.

Both the candidates and the objectors claim that the statute is unambiguous and clear on its face. We find the opposite to be true. Having done a painstakingly careful analysis of the statutory language, however, we conclude that the objectors' interpretation is in accord with the intent of the legislature.

In order to determine whether the legislature intended the 1977 city-wide or the 1979 aldermanic election to be used as the basis for computing the signature requirement for this election, we must carefully examine the language of section 10—3.

The terms "political subdivision" and "district", as used in section 10—3, are specifically defined in sections 1—3(6) and 1—3(13) of the Election Code. Political subdivision means *any unit of local government, or school district in which elections are or may be held.*" (Emphasis added.) (Ill. Rev. Stat. 1979, as amended, ch. 46, par. 1—3(6).) District means "any area which votes as a unit for the election of any officer, *other than* the State or a *unit of local government* or school district, and includes, but is not limited to, legislative, congressional and judicial districts, judicial circuits, county board districts, municipal and sanitary

district *wards*, school board districts, and precincts." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 46, par. 1—3(13) (as amended).

The statutory definition of political subdivision encompasses the City of Des Plaines since the city is a unit of local government in which elections are held. The definition of district, on the other hand, excludes units of local government and by its express language includes a ward.

Substituting "ward" for "district" and "city" for "political subdivision," the statute becomes somewhat more comprehensible in terms of the instant case.

> "Nominations of independent candidates for public office within any * * * [Ward] *or* * * * [City] * * * may be made by nomination papers signed in the aggregate for each candidate by qualified voters of such * * * [Ward], *or* * * * [City], equaling not less than 5%, nor more than 8% (or 50 more than the minimum, whichever is greater) of the number of persons, who voted at the next preceding general election in such * * * [Ward] *or* * * * [City] in which such * * * [Ward] *or* * * * [City] voted as a unit for the election of officers to serve *its* respective territorial area * * *." (Emphasis added.)

■■ The last election at which the City of Des Plaines "voted as a unit for the election of officers to serve its respective territorial area" was 1977. The last election at which *each* of the eight wards in Des Plaines "voted as a unit to serve its respective territorial area" was 1979. Thus, we find that the appropriate basis for computing the signature requirement for the upcoming election of city-wide offices is the 1977 election. Any other construction would require that we totally disregard the phrases "as a unit" and "to serve its respective territorial area."

The second issue we must address is whether the doctrine of estoppel necessitates a finding that the candidates' names should remain on the ballot. Because the trial court construed the statute as it did, it did not consider the candidates' defense of reliance.

The record in this case establishes that city clerk (and candidate) Rohrbach in the past has issued information sheets which set forth the minimum and maximum signature requirements for candidates running for the offices of mayor, clerk, treasurer and alderman. The information sheet issued to candidates in the 1979 aldermanic elections listed signature requirements for each ward based upon a percentage of the votes cast in each ward in the 1977 city-wide elections. Similarly, the information sheet for the 1977 elections listed signature requirements for each ward based upon a percentage of the votes cast in each ward in the 1975 aldermanic elections. In addition, the 1977 information sheet listed the sum total of the votes cast in the 1975 aldermanic elections, and directed candidates

for the offices of mayor, clerk and treasurer to obtain signatures from between 5% and 8% of the sum total of the number of persons who voted in the 1975 elections.

The information sheet issued by the city clerk for the 1981 election[1] was substantially the same as the one issued for the 1977 elections.[2] The objectors correctly point out that, unlike the 1977 information sheet, the 1981 information sheet makes no specific reference to the office of mayor, clerk or treasurer. The information sheet does, however, indicate the sum total of the votes cast in the eight aldermanic wards in the 1979 elections. We are persuaded that the statement of these totals was meant to imply that they were to be used by the candidates for municipal office in computing the statutory signature requirement.

[1] "CANDIDATES INFORMATION

April 7, 1981 Election

Chapter 46, Article 103 [sic]—Petition Requirements:

No less than 5%, no more than 8% (or 50 more than the minimum, whichever is *greater*) of the number of persons who voted at the next preceding general election (1979 for Aldermen)

| WARD | VOTES CAST | 5% | 8% | GREATER THAN MINIMUM (50) |
|---|---|---|---|---|
| Ward One (1) | 1494 | 75 | 120 | 125 |
| Ward Two (2) | 1147 | 57 | 92 | 107 |
| Ward Three (3) | 1374 | 69 | 110 | 119 |
| Ward Four (4) | 921 | 46 | 74 | 106 |
| Ward Five (5) | 442 | 22 | 35 | 72 |
| Ward Six (6) | 754 | 38 | 60 | 88 |
| Ward Seven (7) | 624 | 31 | 50 | 81 |
| Ward Eight (8) | 870 | 44 | 70 | 94 |
| TOTALS | 7619 [sic] | 382 | 611." | |

[2] "December 6, 1976

TO:   Persons filing for Public Office, City of DesPlaines

Number of signatures required on Petition for Nomination
Independent Candidate [for the April, 1977 election]

| WARD | TOTAL NO. VOTES CAST 1975 | 5% or minimum | 8% or maximum |
|---|---|---|---|
| 1 | 879 | 44 | 70 |
| 2 | 1177 | 59 | 94 |
| 3 | 1318 | 66 | 105 |
| 4 | 781 | 39 | 62 |
| 5 | 302 | 25[sic] | 25[sic] |
| 6 | 742 | 37 | 59 |
| 7 | 700 | 35 | 56 |
| 8 | 180 | 25[sic] | 25[sic] |
| For Mayor, Clerk, Treasurer | | | |
| | 6079 | 304[sic] | 486[sic]." |

The objectors argue that the candidates' reliance argument is not well founded since the candidates failed to learn of the applicable law. Counsel for the objectors has called our attention to *Paulus v. Smith* (1966), 70 Ill. App. 2d 97, 217 N.E.2d 527 (city official issued a permit authorizing an advertising company to erect a billboard closer to an expressway than allowed by municipal ordinance), and *Sinclair Refining Co. v. City of Chicago* (1927), 246 Ill. App. 152 (city official issued a building permit to a gasoline filling station owner to erect a station closer to schools and other buildings than permitted by municipal ordinance). The court in both cases refused to invoke the doctrine of estoppel because to do so "would be going in the direction of suspending and repealing ordinances without any action on the part of the city council; in other words, making acts of the employees or agents, though beyond the scope of their authority, and known by the parties to be such, the equivalent of legislation." 70 Ill. App. 2d 97, 111; 246 Ill. App. 152, 162.

In both *Paulus* and *Sinclair Refining*, the parties who raised the estoppel argument were cognizant of the fact that their actions were in contravention of municipal ordinances. Dissimilarly, the candidates in the instant case obviously were unaware of the statutory signature requirements as we have interpreted them. Indeed, it would be a great injustice to penalize any candidate for failure to understand a provision in the Election Code which we ourselves have had considerable difficulty in interpreting.

Relying on *Paulus* and *Sinclair Refining*, the objectors additionally argue that since the city clerk was acting beyond the scope of her authority in disseminating materials regarding the statutory signature requirements, reliance on her information sheet was unjustified. We find this argument unpersuasive. Since the city clerk traditionally has handed out information sheets prior to elections and since the practice has gone unchallenged for several years, we do not find that reliance on such information was unjustified. Furthermore, it is obvious that in distributing the information sheets containing information which was incorrect under our reading of the statute, the clerk's intention was not to undermine the statutory scheme, but rather to perform a meaningful public service.

■■ Of the three candidates involved in this appeal, only candidate Volberding actually testified that he relied on the information sheet issued by the city clerk. He testified and introduced evidence which proves that he did in fact obtain the number of signatures required under our interpretation of section 10—3. Relying on the clerk's information sheet, however, he filed only 600 of them. We find, therefore, that candidate Volberding may invoke the doctrine of estoppel, and that his name should appear on the electoral ballot in the upcoming election.

The other two candidates, Seitz and Rohrbach, did not testify at the

hearing before the electoral board. They simply adopted the exhibits introduced by candidate Volberding. In the absence of any evidence of actual reliance by Seitz and Rohrbach, we cannot find on the basis of estoppel, that their names should appear on the ballot in the upcoming election.

■■ Finally, we must consider whether the names of candidates Seitz and Rohrbach should appear on the ballot even though their nomination papers did not contain the minimum number of signatures and even though there was no evidence of reliance.

The primary purpose of the signature requirement is to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters. (*Briscoe v. Kusper* (7th Cir. 1970), 435 F.2d 1046, 1054.) While we recognize the State's interest in regulating elections by setting such requirements, we also recognize the right of qualified voters to cast their votes effectively. (See *Illinois State Board of Elections v. Socialist Workers Party* (1979), 440 U.S. 173, 184, 59 L. Ed. 2d 230, 99 S. Ct. 983.) Despite the fact that the candidates failed to comply with the minimum statutory signature requirement under our interpretation of the statute, they have demonstrated at least a minimal appeal to the voters. Denying Seitz and Rohrbach access to the electoral ballot would be penalizing not only the candidates themselves, but also the voters in the City of Des Plaines. In our judgment, the interests of justice will best be served by allowing the names of all three candidates to appear on the ballot in the April 7, 1981, election.

■■ For future reference, we note that the minimum statutory signature requirement is mandatory and should be strictly followed. For the present, however, we find that the integrity of the electoral process can be upheld without penalizing the candidates for failure to comply with an almost incomprehensible statutory provision.

For the foregoing reasons, the order of the circuit court of Cook County affirming the decision of the electoral board is modified for the reasons set out in this opinion and is affirmed as modified.

Order affirmed as modified.

O'CONNOR and CAMPBELL, JJ., concur.