JOHN J. McNAMARA *et al.*, Petitioners-Appellants, v. THE OAK LAWN MUNICIPAL OFFICERS ELECTORAL BOARD *et al.*, Respondents-Appellees.

First District (1st Division)   No. 1—05—0421

Opinion filed April 11, 2005.

Daniel J. Kelley, of Chicago, for appellants.

Scott F. Uhler and Cynthia S. Grandfield, both of Klein, Thorpe & Jenkins, Ltd., and Burton S. Odelson, of Odelson & Sterk, Ltd., both of Chicago, for appellees.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:
Petitioners John J. McNamara and George A. Pappas appeal an order by the circuit court affirming the decision of respondent Oak Lawn Municipal Officers Electoral Board (Board) to invalidate nomination papers filed by them for the April 5, 2005, Oak Lawn election. The Board found the nomination papers invalid under section 10—3

of the Election Code (Code) (10 ILCS 5/10—3 (West 2002)) and ordered that petitioners' names not be printed on the ballot. We reverse.

Petitioners filed joint nomination papers as independent candidates in the upcoming election for the Village of Oak Lawn. The nomination papers contained a joint heading that listed McNamara as the candidate for village president and Pappas as the candidate for village clerk. The papers were signed by a little over 900 voters, just under 8% of the qualified voters for the village. Respondent Harry Yourell objected to the nomination papers on the ground that the papers did not comply with section 10—3 of the Code.

The Board, comprised of respondents Ronald Stanick, Marjorie Joy and Robert Streit, sustained the objection by a 2 to 1 vote and ordered that petitioners' names not be printed on the ballot. The majority found section 10—3 of the Code prohibits independent candidates from filing joint nomination papers for the offices of village president and village clerk: "The Election Code requires that an independent candidate circulate and collect signatures for himself alone and cannot combine his candidacy with that of another [i]ndependent [c]andidate as a 'slate[.]' " Board member Streit wrote a dissenting opinion.

Petitioners sought judicial review of the Board's decision in the circuit court. The circuit court agreed with the Board's finding that section 10—3 of the Code required independent candidates to file individual nomination papers. The court ruled petitioners' nomination papers were invalid under the statute because they were filed jointly and affirmed the Board's decision.

Petitioners appeal. We granted an expedited briefing schedule and ordered a motion to dismiss filed by respondent Yourell taken with the case. We first address the motion to dismiss, which challenges our jurisdiction to hear this appeal.

Yourell moves to dismiss the appeal for petitioners' failure to name and serve necessary parties. The motion alleges petitioners failed to name David Orr, the Cook County clerk, as a party to this appeal and that no service of the appellate court proceedings was attempted on the Board members, Yourell or the Cook County clerk. Yourell maintains such failures deprive this court of jurisdiction under section 10—10.1 of the Code (10 ILCS 5/10—10.1 (West 2002)). Petitioners respond that Yourell's motion is brought in bad faith and request sanctions.

Illinois courts may exercise jurisdiction over election cases only when such jurisdiction is provided for by statute. *Hough v. Will County Board of Elections*, 338 Ill. App. 3d 1092, 1093-94, 789 N.E.2d 795 (2003). Section 10—10.1 of the Code sets out the jurisdictional

prerequisites for judicial review of election cases. *Hough*, 338 Ill. App. 3d at 1094. That section requires: (1) a challenging petition be filed with the clerk of the court within 10 days after the electoral board issues its decision; (2) the petition state briefly the reasons why the board's decision should be reversed; (3) the petitioner serve copies of the petition on the electoral board and other parties to the proceeding by registered or certified mail; and (4) the petitioner file proof of service with the clerk of the court. 10 ILCS 5/10—10.1 (West 2002). Yourell does not claim that the challenging petition in the circuit court failed to comply with the jurisdictional requirements of the Code. Yourell's allegation that petitioners failed to serve the necessary parties with notice of the appellate court proceedings, an allegation refuted by petitioners, does not raise a jurisdictional bar under section 10—10.1 of the Code. Also, Yourell's argument that the failure to name and serve the Cook County clerk deprives us of jurisdiction ignores our holding in *Allord v. Municipal Officers Electoral Board*, 288 Ill. App. 3d 897, 904, 682 N.E.2d 125 (1997), where we found there was no such requirement. The motion to dismiss the appeal is denied. Because there is no evidence of bad faith in filing the motion, petitioners' request for sanctions is denied.

We turn to the substantive issue raised by this appeal: whether, under section 10—3 of the Code, independent candidates for local election may file joint nomination papers. The issue is one of statutory construction.

The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 45, 779 N.E.2d 875 (2002). The best indication of legislative intent is the plain and ordinary meaning of the statutory language. *Birkett*, 202 Ill. 2d at 45. Where the language is clear and unambiguous, we must apply the statute without resort to other aids of statutory construction. *Birkett*, 202 Ill. 2d at 45-46. If the statutory language is ambiguous, we look to other sources to decide the legislature's intent. *Birkett*, 202 Ill. 2d at 46. The construction of a statute is a question of law that is reviewed *de novo*. *Birkett*, 202 Ill. 2d at 46.

■ Section 10—3 of the Election Code reads in pertinent part:
"Nominations of independent candidates for public office within any district or political subdivision less than the State, may be made *by nomination papers signed in the aggregate for each candidate* by qualified voters of such district, or political subdivision, equaling not less than 5%, nor more than 8% *** of the number of persons, who voted at the next preceding regular election in such district or political subdivision in which such district or political

subdivision voted as a unit for the election of officers to serve its respective territorial area \*\*\*." (Emphasis added.) 10 ILCS 5/10—3 (West 2002).

Petitioners argue the statute allows independent candidates to file joint nomination papers as evidenced by the legislature's reference to candidates in the plural and inclusion of the words "in the aggregate." Respondents argue the words "each candidate" require independent candidates to file individual nomination papers.

We agree with this reading. The statute requires that each independent candidate file separate, individual nomination papers signed in the aggregate by a specified percentage of qualified voters. "[N]omination papers signed in the aggregate," the language relied on by petitioners, refers to the *compilation* of signature sheets viewed as a set. It does not refer to the number of candidates that may be listed on a set of nomination papers.

■ But our inquiry does not end there. We must decide whether petitioners' noncompliance with section 10—3 compels striking them from the ballot. Respondents argue petitioners' names cannot appear on the ballot under section 10—4 of the Code. Section 10—4 requires that all petitions for nomination under Article 10 of the Election Code comply with certain authenticity, formatting and stylistic specifications. 10 ILCS 5/10—4 (West 2002). Section 10—4 imposes a penalty for violation of that section: "No signature shall be valid or be counted in considering the validity or sufficiency of such petition unless the requirements of *this [s]ection* are complied with." (Emphasis added.) 10 ILCS 5/10—4 (West 2002). Once again, we find the language of the statute clear. The penalty only applies to violations of section 10—4. See *Ballentine v. Bardwell*, 132 Ill. App. 3d 1033, 1038-39, 478 N.E.2d 500 (1985) (rejecting argument that penalty provision of section 10—4 applies to violations of section 10—5 of the Code).

■ Petitioners argue that, if this court finds noncompliance with section 10—3, their names should nonetheless appear on the ballot. Petitioners cite cases where our Illinois courts, relying on fundamental constitutional principles, have declined to penalize election law violations. The policy favors ballot access and guards the right of voters to endorse and nominate the candidate of their choice. See, *e.g., Lucas v. Lakin*, 175 Ill. 2d 166, 176, 676 N.E.2d 637 (1997); *Welch v. Johnson*, 147 Ill. 2d 40, 56-57, 588 N.E.2d 1119 (1992); *Anderson v. Schneider*, 67 Ill. 2d 165, 365 N.E.2d 900 (1977). In deciding whether petitioners' noncompliance with section 10—3 is fatal to their nomination, we rely on *People ex rel. Meyer v. Kerner*, 35 Ill. 2d 33, 39, 219 N.E.2d 617 (1966). Our supreme court in *Kerner* held:

"Where a statute provides that an election shall be rendered void

by failure of those involved in the election process to perform certain duties, the courts are bound to enforce it as mandatory. [Citations.] But, where the statute does not expressly declare its provisions to be mandatory or compliance therewith to be essential to its validity, the failure to strictly comply, in the absence of fraud or a showing that the merits of the election were affected thereby, is not fatal." *Kerner*, 35 Ill. 2d at 39.

Section 10—3 does not contain mandatory language, nor does it provide that compliance is essential to effect a valid nomination. The legislature used the word "may" in describing how nominations may be made: "Nominations of independent candidates for public office within any district or political subdivision less than the State, *may* be made by nomination papers signed in the aggregate for each candidate by qualified voters of such district[ ] or political subdivision ***." (Emphasis added.) 10 ILCS 5/10—3 (West 2002). The word "shall" appears several times within section 10—3 but it does not appear in the pertinent provision. We conclude that the legislature did not intend that this provision be mandatory. See *Briscoe v. Kusper*, 435 F.2d 1046, 1056 (7th Cir. 1970) (interpreting section 10—3 in the least restrictive and most obvious manner to uphold its constitutionality).

Also, section 10—3 does not provide that an election will be rendered void by the failure of those involved in the election process to perform according to its terms. *Cf.* 10 ILCS 5/10—4 (West 2002); *Wollan v. Jacoby*, 274 Ill. App. 3d 388, 393, 653 N.E.2d 1303 (1995) (interpreting section 10—4 of the Code as mandatory and to require strict compliance). Accordingly, even if we were to find section 10—3 mandatory rather than directory, compliance therewith is not essential to the validity of a nomination. See *Ballentine*, 132 Ill. App. 3d at 1039 (in the absence of an applicable strict compliance provision, candidates' names may appear on ballot despite violation of section 10—5 of the Code).

Finally, respondents have not alleged petitioners engaged in fraud or that the merits of the election would be affected by petitioners' failure to file individual nomination papers. We note petitioners received more than the minimal percentage of voter signatures. The statute provides that the nomination papers be signed by no less than 5% and no more than 8% of the qualified voters for the district or political subdivision where the election is to take place. 10 ILCS 5/10—3 (West 2002). Petitioners obtained more than 900 voter signatures, just under 8% of the qualified voters for the village. See *Merz v. Volberding*, 94 Ill. App. 3d 1111, 1118, 419 N.E.2d 628 (1981) (allowing names of independent candidates to appear on ballot despite failure to obtain signatures from at least 5% of the qualified voters).

So what is the consequence for a failure to abide by the procedures set forth in section 10—3 absent a showing of fraud or that the merits of the election would be affected? We do not know, not because the statute is ambiguous but because it is silent. While it seems clear to us that the statute anticipates that independent candidates for various offices in an election will file separate nomination petitions, it may be that the legislature simply did not anticipate what happened in this case. We will not read a remedy into a statute that fails to provide for one, particularly a drastic remedy that deprives a citizen of the right to run for office. See *In re Marriage of Mitchell*, 319 Ill. App. 3d 17, 22-23, 745 N.E.2d 167 (2001) (refusal to read into statute remedy the legislature did not specifically authorize); *Ballentine*, 132 Ill. App. 3d at 1038 (appellate court cannot restrict or enlarge the plain meaning of an unambiguous statute).

The motion to dismiss the appeal is denied. The judgment of the circuit court affirming the Board and the order of the Board are reversed. The Board is directed to place petitioners' names on the ballot for the April 5, 2005, village election.

Reversed.

McBRIDE and KARNEZIS, JJ., concur.