# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Atkinson v. Schelling*, 2013 IL App (2d) 130140

---

| | |
|---|---|
| Appellate Court Caption | KORY ATKINSON, Petitioner-Appellant, v. JIM SCHELLING; THE VILLAGE OF ROSELLE MUNICIPAL OFFICERS' ELECTORAL BOARD; JOSEPH BONGIORNO, Member; KEVIN MILLON, Member; BARBARA HOCHSTADT, Chairperson; THE DU PAGE COUNTY ELECTION COMMISSION; and THE COOK COUNTY CLERK, Respondents-Appellees.–KORY ATKINSON, Petitioner-Appellant, v. JAMES "JIM" BANKS; THE VILLAGE OF ROSELLE MUNICIPAL OFFICERS' ELECTORAL BOARD; JOSEPH BONGIORNO, Member; KEVIN MILLON, Member; BARBARA HOCHSTADT, Chairperson; THE DU PAGE COUNTY ELECTION COMMISSION; and THE COOK COUNTY CLERK, Respondents-Appellees. |
| District & No. | Second District<br>Docket Nos. 2-13-0140, 2-13-0141 cons. |
| Filed | April 9, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Petitioner's objections that the nomination papers of two candidates for mayor in a village election did not have the required number of signatures were properly overruled by the electoral board, since the doctrine of estoppel applied where both candidates reasonably relied on information provided by the village clerk as to the number of signatures required, and even if estoppel did not apply, the candidates demonstrated a minimum appeal to the voters such that denying them access to the ballot would penalize both the candidates and the voters. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, Nos. 13-MR-125, 13-MR-126; the Hon. Bonnie M. Wheaton, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Kory A. Atkinson, of Law Office of Kory Atkinson, of Bloomingdale, for appellant. |
| | Diane J. Blair, of Villa Park, for appellee James Banks. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Birkett and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Petitioner, Kory Atkinson, appeals from two separate orders of the trial court affirming decisions of the Village of Roselle Municipal Officers' Electoral Board (Electoral Board) overruling objections to the nomination papers of Jim Schelling[1] and James "Jim" Banks[2] (Candidates) for mayor of Roselle in the April 9, 2013, election. This court granted petitioner's motion to accelerate the appeal. We consolidated these cases on appeal. For the reasons that follow, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    The following facts are not contested. The Candidates timely filed nomination papers to have their names appear on the ballot in the April 9, 2013, consolidated election, for the office of mayor of the Village of Roselle. Schelling's papers contained 110 signatures and Banks's papers contained 105 signatures. Petitioner filed separate objections to the Candidates' nominating papers, arguing that the papers did not contain the minimum number of signatures required by section 10-3 of the Illinois Election Code (Election Code) (10 ILCS 5/10-3 (West 2010)). Section 10-3 of the Election Code provided in relevant part:

"Nominations of independent candidates for public office within any district or political subdivision less than the State, may be made by nomination papers signed in the aggregate for each candidate by qualified voters of such district, or political subdivision, equaling not less than 5%, nor more than 8% (or 50 more than the minimum, whichever is greater) of the number of persons, who voted at the next preceding regular election in such district or political subdivision in which such district or political subdivision voted

_____

[1]Case number 13-MR-125; appeal number 2-13-0140.

[2]Case number 13-MR-126; appeal number 2-13-0141.

-2-

as a unit for the election of officers to serve its respective territorial area." 10 ILCS 5/10-3 (West 2010).

¶ 4 Petitioner argued that 5% of the number of persons who cast ballots in the Village of Roselle in the April 5, 2011, consolidated election equaled 123 signatures. Petitioner argued that the Candidates' names should not appear on the ballot because their nomination papers failed to include the minimum number of signatures and were, thus, invalid.

¶ 5 During the Electoral Board hearing, the Candidates testified that in filing their nomination papers they relied on a letter from Roselle village clerk, Patty Burns (Village Clerk). The letter stated in part:

> "**It is the candidate's responsibility to be knowledgeable of all election requirements, filing dates and other election related information.** This packet is being provided as a courtesy from the Village Clerk's office. You should seek legal counsel to insure you have all the documents and information you need.
>
> * * *
>
> - Nominating petitions for **Independent Mayor** should have a minimum of 80 petition signatures with a maximum of 126 petition signatures.
> - Nominating petitions for **Independent Clerk** should have a minimum of 95 signatures with a maximum of 148 petition signatures.
> - Nominating petitions for **Independent Village Trustee** should have a minimum of 115 signatures with a maximum of 180 petition signatures."

¶ 6 The Candidates presented evidence and argued that the Village Clerk arrived at the number 80 by using the number of votes cast for the office of mayor in the last preceding election for that office. Schelling testified that he relied on "the results of the last preceding mayoral ballot" and the fact that the Village Clerk was a veteran and "knows what she's doing." Further, the Candidates testified that they also relied on information contained in the State of Illinois Candidate's Guide (Candidate's Guide) issued by the Illinois State Board of Elections, which provided:

> "For the number of signatures–candidates should contact the election authority or the local election official who is responsible for receiving the filing of the petition for nomination and/or election office for further information as to the specific number of signatures required on a nominating petition for a specific office (or for the data needed to calculate that number)."

¶ 7 The Electoral Board made the following determinations, relying on *Merz v. Volberding*, 94 Ill. App. 3d 1111 (1981):

> "[T]he Village Clerk did provide the Candidate[s] information relative to the required minimum number of signatures required to be [candidates] for the Office of Mayor, and *** the Candidate[s] relied on this information in filing the Nominating Papers. *** [T]he Candidate[s] filed signatures in excess of the minimum number the Village Clerk stated were required, and by these signatures they had demonstrated at least minimal appeal to voters. *** [T]o deny the Candidate[s] a place on the ballot as a result of [their] reliance on the said information would penalize not only the Candidate[s], but also the

voters in the Village of Roselle [and] create an injustice not intended by the Election Code."

¶ 8 The Electoral Board overruled petitioner's objections "as a result of reliance on the information provided by the Village Clerk" and ordered the Candidates' names to be included on the April 9, 2013, ballot. On February 7, 2013, the trial court affirmed the Electoral Board's decisions, in separate orders. On February 11, 2013, petitioner timely filed separate notices of appeal. This court consolidated these cases on appeal.

¶ 9                                                    II. ANALYSIS

¶ 10 On appeal, petitioner argues that the Electoral Board erred by determining that equitable estoppel applied in these cases, because: (1) section 10-3 of the Election Code is no longer ambiguous; and (2) this court has declined to follow *Merz*, the case relied on by the Electoral Board.

¶ 11 Judicial review of an electoral board's decision is considered to be administrative review. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 46. On appeal in such a case, we review the decision of the electoral board, not the determination of the trial court. *Id.* As in the present case, where the facts are not in dispute but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a question of law, which we review *de novo*. *Id.* ¶ 47.

¶ 12 To invoke estoppel against a public body a litigant must establish an affirmative act on the part of the public body that induced substantial reliance. *Heabler v. Municipal Officers Electoral Board*, 338 Ill. App. 3d 1059, 1063 (2003).

¶ 13 The facts in these cases are almost identical to those in *Merz*, 94 Ill. App. 3d 1111. In *Merz*, objectors challenged the rights of three candidates to appear on the ballot for mayor of Des Plaines, claiming that the candidates' petitions did not contain the minimum number of signatures required by section 10-3 of the Election Code. *Id.* at 1112. One of the candidates, Volberding, testified that he relied on an information sheet provided by the city clerk to determine the number of signatures required. *Id.* at 1113. The city clerk had interpreted section 10-3 improperly, providing the total of votes cast in the wrong election. *Id.* at 1116. The appellate court held that, because Volberding relied on the city clerk's information sheet, estoppel was properly invoked and Volberding's name should appear on the ballot. *Id.* at 1117.

¶ 14 As to the other two candidates, Seitz and Rohrbach, the *Merz* court held that estoppel did not apply because there was no evidence of reliance. *Id.* at 1118. However, the court held that, because Seitz and Rohrbach "demonstrated at least a minimal appeal to the voters," their names should appear on the ballot. *Id.* The court reasoned that denying these candidates "access to the electoral ballot would be penalizing not only the candidates themselves, but also the voters in the City of Des Plaines." *Id.* Regarding all three candidates, the court concluded that "the interests of justice will best be served by allowing the names of all three candidates to appear on the ballot." *Id.*

¶ 15 The Candidates in this case, like Volberding in *Merz*, testified that they actually relied on the Village Clerk's information. See *id.* at 1117. Further, the Candidate's Guide directed

-4-

them to the Village Clerk's office to determine the number of signatures required. Thus, we determine that the Candidates may invoke the doctrine of estoppel and that the Electoral Board properly ruled that their names should appear on the ballot.

¶ 16 Petitioner argues that estoppel is unavailable in these cases because section 10-3 is no longer ambiguous. Petitioner argues that the *Merz* court provided a definitive construction of section 10-3 such that estoppel is no longer available. However, the interpretation of section 10-3 in *Merz* was limited and did not address the ambiguity in this case. In *Merz*, the court interpreted the terms "political subdivision" and "district" to determine whether the legislature intended that the 1977 city-wide election or the 1979 aldermanic election was to be used as the basis for computing the signature requirement. *Id.* at 1114. In this case, there was evidence that the Village Clerk arrived at the number 80 because that was the number of votes cast only for the office of mayor in the last preceding election for that particular office. Thus, *Merz* did not address the statutory issue in this case, which involves the interpretation of "election of officers," rather than the interpretation of the terms "political subdivision" and "district." Accordingly, *Merz* does not preclude the Candidates in this case from invoking the doctrine of estoppel.

¶ 17 Petitioner argues that the Candidates did not establish reasonable reliance, because the Village Clerk's letter provided a "warning." Although the letter included a general disclaimer, the Candidate's Guide directed the Candidates to the Village Clerk for "the specific number of signatures required on a nominating petition" and the Village Clerk's letter provided the precise information they needed. In addition, the Candidates believed that the Village Clerk was a veteran and that she knew what she was doing. Thus, although the letter contained a general disclaimer, the Candidates reasonably relied on it.

¶ 18 Next, petitioner argues that equitable estoppel is unavailable in these cases because this court declined to follow *Merz* in *Vestrup v. Du Page County Election Comm'n*, 335 Ill. App. 3d 156 (2002). In *Vestrup* this court held that, under section 10-2 of the Election Code, the Libertarian Party was not an "established political party" with respect to the 2002 general election, because of redistricting. *Id.* at 164. Because *Vestrup* interprets a different section of the Election Code from the section at issue here, it is distinguishable from this case.

¶ 19 We recognize that the *Vestrup* court stated that it "decline[d] to follow *Merz*." *Id.* at 166. However, the court actually rejected the reasoning and not the holding of *Merz*; that is, the court rejected the *Merz* court's estoppel rationale. *Id.* Because the *Vestrup* court did not reject the holding of *Merz*, *stare decisis* was not disturbed. See *People v. Trimarco*, 364 Ill. App. 3d 549, 555 (2006) (McLaren, J., dissenting) ("*Stare decisis* is the doctrine of the courts to stand by precedent. The expression *stare decisis* is but an abbreviation of *stare decisis et non quieta movere* (to stand by or adhere to decisions and not disturb that which is settled). *** The doctrine is not *stare dictis*. It is not 'to stand by or keep to what was said.' The doctrine is not *stare ratio decidendi* or 'keep to the reason for deciding of past cases.' Rather a case is important only for what it decides: for 'the what,' not for 'the why,' and not for 'the how.' *** Thus, *stare decisis* means what the court did, not what it said." (Emphasis omitted.)). Accordingly, because the holding of *Merz* has not been disturbed, the facts in this case are almost identical to those in *Merz*, and *Merz* is persuasive authority for the case at bar, we adopt the holding of *Merz*.

¶ 20     Further, nothing in section 10-3 addresses what the remedy is for noncompliance with section 10-3; the section is silent regarding this issue. *McNamara v. Oak Lawn Municipal Officers Electoral Board*, 356 Ill. App. 3d 961, 967 (2005). Although petitioner urges us to keep the Candidates off the ballot, "[w]e will not read a remedy into a statute that fails to provide for one, particularly a drastic remedy that deprives a citizen of the right to run for office." *Id.*

¶ 21     In addition, even if estoppel did not apply to the Candidates in this case, they have demonstrated at least a minimal appeal to the voters. *Merz*, 94 Ill. App. 3d at 1118. In *Merz*, the court held that 550 of the 778 signatures required demonstrated a minimal appeal to the voters such that their names should appear on the ballot. *Id.* at 1113, 1118. The disparity in this case is lower. Schelling and Banks filed 110 and 105 signatures, respectively, where 123 signatures were required. Thus, although the Candidates did not file a sufficient number of signatures, they have demonstrated at least a minimal appeal to the voters. It is a fundamental principle that access to a place on the ballot is a substantial right and not lightly to be denied. *Nolan v. Cook County Officers Electoral Board*, 329 Ill. App. 3d 52, 55 (2002). Denying the Candidates access to the electoral ballot would penalize not only the Candidates but also the voters in the Village of Roselle. *Merz*, 94 Ill. App. 3d at 1118.

¶ 22                                    III. CONCLUSION
¶ 23     For these reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 24     Affirmed.