NOTICE
Decision filed 02/17/15. The
text of this decision may be
changed or corrected prior to
the filing of a Petition for
Rehearing or the disposition of
the same.

2015 IL App (5th) 150028

NO. 5-15-0028

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| EMEKA JACKSON-HICKS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-MR-496 |
| | ) | |
| THE EAST ST. LOUIS BOARD OF ELECTION | ) | |
| COMMISSIONERS, and its Members, ELMER | ) | |
| D. JONES, Chairman, EDNA R. ALLEN, | ) | |
| Vice-Chairman, and JOSEPH McCASKILL, | ) | |
| Secretary, and ALVIN L. PARKS, JR., | ) | |
| Candidate for Mayor, | ) | Honorable |
| | ) | Heinz M. Rudolf, |
| Respondents-Appellees. | ) | Judge, presiding. |

_____

JUSTICE SCHWARM delivered the judgment of the court, with opinion.
Justices Welch and Moore concurred in the judgment and opinion.

OPINION

¶ 1     In this expedited appeal, we are asked to determine whether substantial

compliance with the signature requirement for an independent candidate's nomination

papers is sufficient to retain his name on the ballot for an upcoming mayoral election.

For the following reasons, we conclude that it is.

¶ 2                          BACKGROUND

¶ 3     The petitioner, Emeka Jackson-Hicks, a candidate for the office of mayor of East

1

St. Louis, filed an objector's petition with the East St. Louis Board of Election Commissioners (the Board) challenging the nomination papers of incumbent candidate Alvin Parks, Jr. (Parks). See 10 ILCS 5/10-8 (West 2012). The petitioner maintained that Parks' name should be excluded from the ballot for the February 24, 2015, consolidated primary election on the grounds that his nomination papers failed to include the minimum number of voter signatures required by law.

¶ 4 On December 10, 2014, the Board held a hearing on the petitioner's objection. See 10 ILCS 5/10-9 (West 2012). The evidence before the Board established that pursuant to section 10-3 of the Election Code (10 ILCS 5/10-3 (West 2012)), Parks' nomination papers required a minimum of 136 voter signatures. The evidence further established that although Parks had garnered a total of 171 signatures, 48 had been deemed invalid. His nomination papers thus included a total of 123 valid signatures, 13 short of the minimum required. Notably, when arguing that the petitioner's objection should be denied, the respondents cited *Atkinson v. Schelling*, 2013 IL App (2d) 130140, as controlling precedent.

¶ 5 At the conclusion of the hearing, the Board unanimously voted to deny the petitioner's objection and subsequently issued a written statement of its findings and decision. See 10 ILCS 5/10-10 (West 2012). In its written statement, the Board held that although Parks had been statutorily required to obtain 136 valid signatures on his nomination papers, he had substantially complied with the requirement by obtaining 123. The Board thus ruled that Parks' name would remain on the ballot for the February 24, 2015, consolidated primary election.

2

¶ 6    On December 12, 2014, in the circuit court of St. Clair County, the petitioner filed a petition for judicial review of the Board's decision. See 10 ILCS 5/10-10.1 (West 2012). On January 12, 2015, the cause proceeded to a hearing. At the hearing, citing *Atkinson* and *Merz v. Volberding*, 94 Ill. App. 3d 1111 (1981), as directly on point, the respondents maintained that the Board had rightfully determined that Parks' name should remain on the ballot because he had substantially complied with section 10-3. In response, noting that *Atkinson* had been decided by the Second District Appellate Court and *Merz* had been decided by the First, the petitioner argued that the circuit court was bound to follow the Fifth District's decisions in *Powell v. East St. Louis Electoral Board*, 337 Ill. App. 3d 334 (2003), and *Knobeloch v. Electoral Board for the City of Granite City*, 337 Ill. App. 3d 1137 (2003), both of which held that substantial compliance with a mandatory provision of the Election Code is insufficient. The respondents countered that *Powell* and *Knobeloch* did not involve section 10-3 and that both cases predated *Goodman v. Ward*, 241 Ill. 2d 398 (2011), in which the supreme court acknowledged that substantial compliance can satisfy a mandatory provision of the Election Code. Agreeing with the respondents, the circuit court ultimately concluded that it was "bound" to follow *Atkinson* and affirmed the Board's decision.

¶ 7    On January 20, 2015, the petitioner filed a timely notice of appeal. On February 6, 2015, we granted the petitioner's motion to expedite her appeal pursuant to Illinois Supreme Court Rule 311(b) (eff. Feb. 26, 2010).

¶ 8                                  DISCUSSION

¶ 9    On appeal, citing *Powell* and *Knobeloch*, the petitioner asserts that the Board

3

erroneously determined that substantial compliance with section 10-3's signature requirement is acceptable. The petitioner further suggests that *Atkinson* and *Merz* were wrongly decided and established an amorphous and unworkable standard.

¶ 10 The respondents maintain that the provision at issue is directory rather than mandatory and that even if it is mandatory, *Atkinson*, *Merz*, and *Goodman* support the Board's decision. The respondents further distinguish *Powell* and *Knobeloch* as "inapposite to this case."

¶ 11 Standards of Review

¶ 12 There are three types of questions that a court may encounter when reviewing a decision of an electoral board: questions of fact, questions of law, and mixed questions of fact and law. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). "An administrative agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct" and will not be disturbed unless they are against the manifest weight of the evidence. *Id.* "[F]actual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident." *Id.*

¶ 13 "[W]here the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo*." *Goodman*, 241 Ill. 2d at 406. Whether a statute is mandatory or directory is an issue of law that is also reviewed *de novo*. *O'Brien v. White*, 219 Ill. 2d 86, 97 (2006).

¶ 14 "A mixed question of law and fact asks the legal effect of a given set of facts." *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill.

4

2d 455, 472 (2005). "[I]n resolving a mixed question of law and fact, a reviewing court must determine whether established facts satisfy applicable legal rules." *Id.* The "clearly erroneous" standard of review applies to mixed questions of law and fact. *Cinkus*, 228 Ill. 2d at 211. A decision is considered clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*

¶ 15 Because judicial review of an electoral board's decision is considered administrative review, we review the Board's decision, not the decision of the circuit court. *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 46. Here, the Board's determination that the statutory provision at issue requires only substantial compliance is a question of law (see *O'Brien*, 219 Ill. 2d at 97), while its determination that Parks substantially complied with the statute presents a mixed question of law and fact (see *Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581, ¶ 11).

¶ 16                          *Powell* and *Knobeloch*

¶ 17  In *Powell*, three mayoral candidates' names were kept off the ballot for their failure to comply with the statement-of-economic-interest requirement set forth in section 10-5 of the Election Code (10 ILCS 5/10-5 (West 2000)). *Powell*, 337 Ill. App. 3d at 336. After noting that in *Bolger v. Electoral Board of the City of McHenry*, 210 Ill. App. 3d 958, 959-60 (1991), the appellate court had determined that the requirement's use of the word "must" made the requirement mandatory, the *Powell* court rejected the candidates' contention that their good-faith substantial compliance was sufficient. *Powell*, 337 Ill. App. 3d at 337. The court further noted that in *DeFabio v.*

5

*Gummersheimer*, 192 Ill. 2d 63, 66 (2000), the supreme court held that "a mandatory provision of the Election Code" must be strictly enforced. *Powell*, 337 Ill. App. 3d at 338.

¶ 18    In *Knobeloch*, we adhered to our holding in *Powell* when rejecting the candidate's argument that his substantial compliance with the notarization requirements of sections 10-4 and 10-5 of the Election Code (10 ILCS 5/10-4, 10-5 (West 2000)) was sufficient. *Knobeloch*, 337 Ill. App. 3d at 1139-40. We noted that both requirements used the word "shall" and that there was "no dispute" that the provisions at issue were "mandatory." *Id.* at 1139. We further noted that a "mandatory provision is one that will describe the consequences of failing to follow its provisions." *Id.*

¶ 19    In pertinent part, section 10-3 provides as follows:

"Nominations of independent candidates for public office within any district or political subdivision less than the State, may be made by nomination papers signed in the aggregate for each candidate by qualified voters of such district, or political subdivision, equaling not less than 5%, nor more than 8% (or 50 more than the minimum, whichever is greater) of the number of persons, who voted at the next preceding regular election in such district or political subdivision in which such district or political subdivision voted as a unit for the election of officers to serve its respective territorial area." 10 ILCS 5/10-3 (West 2012).

¶ 20    Unlike the provisions addressed in *Powell* and *Knobeloch*, the pertinent provision of section 10-3 "does not contain mandatory language." *McNamara v. Oak Lawn Municipal Officers Electoral Board*, 356 Ill. App. 3d 961, 966 (2005). When enacting

section 10-3, "[t]he legislature used the word 'may' in describing how nominations may be made." *Id.* Additionally, "[t]he word 'shall' appears several times within section 10-3 but it does not appear in the pertinent provision." *Id.* As a matter of statutory construction, it has thus been held that "the legislature did not intend that this provision be mandatory." *Id.*; see also *People v. One 1998 GMC*, 2011 IL 110236, ¶ 16 (noting that the "legislature's use of the word 'may' generally indicates a permissive or directory reading, rather than a mandatory one").

¶ 21 Moreover, unlike sections 10-4 and 10-5, both of which indicate that a candidate's failure to comply will invalidate his or her nominations papers (see 10 ILCS 5/10-4, 10-5 (West 2012)), "nothing in section 10-3 addresses what the remedy is for noncompliance with section 10-3" (*Atkinson*, 2013 IL App (2d) 130140, ¶ 20). "[N]or does it provide that compliance is essential to effect a valid nomination." *McNamara*, 356 Ill. App. 3d at 966. When a provision of the Election Code does not provide a penalty for failure to comply, the provision is deemed directory rather than mandatory. *O'Brien*, 219 Ill. 2d at 97. "By contrast, when an Election Code provision specifies the consequences of noncompliance, the provision has been held to be mandatory." *Id.*

¶ 22 Because section 10-3's signature requirement is directory rather than mandatory, the petitioner's reliance on *Powell* and *Knobeloch* is misplaced, and the Board correctly determined that substantial compliance is sufficient. Directory provisions require only substantial compliance. *Schultz v. Performance Lighting, Inc.*, 2013 IL App (2d) 120405, ¶ 14; see also *People ex rel. Meyer v. Kerner*, 35 Ill. 2d 33, 39 (1966). Moreover, as the respondents observe, *Powell* and *Knobeloch* both predate the supreme court's recognition

7

that in some instances, substantial compliance can satisfy even a mandatory provision of the Election Code. See *Goodman*, 241 Ill. 2d at 409; *Akin v. Smith*, 2013 IL App (1st) 130441, ¶ 9.

¶ 23                                      *Merz* and *Atkinson*

¶ 24    In *Merz*, where three independent candidates' nomination papers did not contain the minimum number of voter signatures required by section 10-3, objections seeking to keep the candidates' names off the ballot for the impending municipal election were filed with the electoral board. *Merz*, 94 Ill. App. 3d at 1113-14. Following a hearing, the board overruled the objections and ordered that the candidates' names be placed on the ballot. *Id.* at 1113. After the circuit court affirmed the board's ruling, the objectors brought an expedited appeal to the appellate court. *Id.*

¶ 25    On appeal, the appellate court affirmed the board's decision with respect to one of the three candidates on the basis of estoppel, since the candidate had relied on information provided by the city clerk as to the number of signatures that he needed. *Id.* at 1115-17. With respect to the other two candidates who were unable to claim estoppel, the appellate court held that despite the fact that they had failed to comply with the minimum statutory signature requirement, they had "demonstrated at least a minimal appeal to the voters." *Id.* at 1118. The court noted that "[t]he primary purpose of the signature requirement is to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters" and that removing the candidates' names from the ballot would penalize "not only the candidates

8

themselves, but also the voters." *Id.* Citing *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979), the court further stated, "While we recognize the State's interest in regulating elections by setting such requirements, we also recognize the right of qualified voters to cast their votes effectively." *Merz*, 94 Ill. App. 3d at 1118. The court thus determined that allowing all three candidates' names to appear on the ballot best served the interests of justice. *Id.* We note that the candidates in *Merz* were statutorily required to obtain at least 778 signatures, but they only had "more than 550 signatures and less than 610." *Id.* at 1113-14.

¶ 26    In *Atkinson*, two mayoral candidates submitted nomination papers with less than the statutorily required minimum of 123 voter signatures. *Atkinson*, 2013 IL App (2d) 130140, ¶¶ 3-4. One of the candidates submitted 110 signatures; the other submitted 105; and both had been told by the village clerk that they needed a minimum of 80. *Id.* ¶¶ 3, 5. Asserting that their failure to obtain 123 signatures rendered the candidates' nomination papers invalid, the petitioner filed objections arguing that the candidates' names should not appear on the ballot. *Id.* ¶ 4. After the electoral board overruled the objections and the circuit court affirmed the board's decision, the petitioner appealed. *Id.* ¶ 8.

¶ 27    On appeal, stating that the facts before it were "almost identical" to those in *Merz*, the appellate court affirmed the board's decision and adopted *Merz*'s holding. *Id.* ¶¶ 13, 19. The court thus determined that the doctrine of estoppel was applicable and that alternatively, the candidates had "had demonstrated at least a minimal appeal to the voters." *Id.* ¶¶ 15, 21. The court further stated that "[i]t is a fundamental principle that

9

access to a place on the ballot is a substantial right and not lightly to be denied" and that denying the candidates access to the electoral ballot would penalize the voters as well as the candidates. *Id.* ¶ 21. The court also noted that the disparities in the number of votes that the candidates needed were less than those in *Merz*. *Id.*

¶ 28 Keeping in mind that we must balance competing interests (see *Socialist Workers Party*, 440 U.S. at 184-85; *Huskey v. Municipal Officers Electoral Board for the Village of Oak Lawn*, 156 Ill. App. 3d 201, 205 (1987)), we conclude that when determining whether a candidate has substantially complied with section 10-3's signature requirement, the "minimal appeal" standard employed in *Merz* and *Atkinson* provides a reasoned approach that recognizes "Illinois courts favor ballot access for candidates who wish to run for public office" (*Forcade-Osborn v. Madison County Electoral Board*, 334 Ill. App. 3d 756, 760 (2002)). The standard is further consistent with the notion that when determining whether substantial compliance has been achieved, courts may consider "whether the deviation impairs the purpose of the specific statutory provision at issue." *Atkinson v. Roddy*, 2013 IL App (2d) 130139, ¶ 17. As noted, "the primary purpose of the signature requirement is to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters." *Heabler v. Municipal Officers Electoral Board of the Village of Lakemoor*, 338 Ill. App. 3d 1059, 1062 (2003); *Merz*, 94 Ill. App. 3d at 1118. We believe that this purpose will not be frustrated where the name of a candidate who has substantially complied with section 10-3 in good faith is allowed to appear on a ballot. We further believe that denying such a

candidate his or her right to run for office would be a drastic remedy that would not best serve the interests of justice. See *Atkinson*, 2013 IL App (2d) 130140, ¶ 20; *McNamara*, 356 Ill. App. 3d at 967; *Merz*, 94 Ill. App. 3d at 1118.

¶ 29    We are not unsympathetic to the petitioner's position, but we are constrained to interpret section 10-3's signature requirement as being directory rather than mandatory. "We will not read words or meanings into a statute when the legislature has chosen not to include them." *People v. Johnson*, 2013 IL 114639, ¶ 12. "Therefore, any remedy lies with the legislature, not the courts, if the legislature may be so inclined." *Id.*

¶ 30                              The Board's Decision

¶ 31    The evidence before the Board established that Parks was statutorily required to have at least 136 voter signatures on his nomination papers. The evidence further established that he submitted a total of 171 signatures. For reasons not entirely apparent from the record, however, 48 of those signatures were deemed invalid. His nomination papers thus included a total of 123 valid signatures, 13 less than the requisite minimum.

¶ 32    Under these circumstances, we cannot conclude that the Board's finding that Parks substantially complied with section 10-3 is clearly erroneous. Had all of the signatures that Parks submitted been valid, he would have had 35 more than he needed, but he ultimately fell 13 signatures short. He nevertheless demonstrated initiative and "at least a minimal appeal" to the eligible voters. *Atkinson*, 2013 IL App (2d) 130140, ¶ 21; *Merz*, 94 Ill. App. 3d at 1118; *cf. Samuelson*, 2012 IL App (1st) 120581, ¶ 36 ("A candidate is deemed not to be in substantial compliance with the Election Code when he 'completely ignores one of the statutory elements.' " (quoting *Jones v. Dodendorf*, 190 Ill. App. 3d

11

557, 561 (1989))). Furthermore, removing Parks' name from the ballot would deprive him of his right to run for office and would prevent the voters of East St. Louis from reelecting their incumbent mayor if they desire to do so. See *Atkinson*, 2013 IL App (2d) 130140, ¶ 21; *Merz*, 94 Ill. App. 3d at 1118. Because we are not left with a definite and firm conviction that a mistake has been made, we accordingly affirm the circuit court's judgment affirming the Board's decision.

¶ 33    We lastly address the petitioner's contention that allowing electoral boards to employ the minimal-appeal standard will result in confusion and random results. In *Merz*, for instance, the candidates obtained less than 80% of the required signatures. In *Atkinson*, the candidates obtained less than 90%. In the present case, after the invalid signatures were discounted, the candidate obtained 90%. Understandably, the petitioner thus asks, "Where does an electoral board or court draw the line?" We cannot answer that question, however, even if we were inclined to do so.

> "It is the duty of this court to decide actual controversies which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it [citation], as decisions of this nature could have an advisory effect only." *South Stickney Park District v. Village of Bedford Park*, 131 Ill. App. 3d 205, 209 (1985).

¶ 34    Moreover, it is an electoral board's duty to decide whether a candidate's nomination papers "are valid or whether the objections thereto should be sustained" (10 ILCS 5/10-10 (West 2012); *People ex rel. Martin v. White*, 329 Ill. App. 81, 91 (1946)),

12

and as noted, we review an electoral board's determination as to whether a candidate has substantially complied with the signature requirement of section 10-3 as a mixed question of law and fact (see *Samuelson*, 2012 IL App (1st) 120581, ¶ 11). "Such review is significantly deferential to an agency's experience in construing and applying the statutes that it administers." *Comprehensive Community Solutions, Inc.*, 216 Ill. 2d at 472. Affording such deference, we trust that an electoral board employing the minimal-appeal standard will exercise its judgment judiciously and will consider all relevant facts and circumstances when deciding whether a candidate has substantially complied with section 10-3's signature requirement. Rather than solely focusing on a specific percentage, such decisions should be made on a case-by-case basis giving due consideration to the requirement's primary purpose. We lastly note that a candidate would be ill-advised to view the standard as a safety net.

¶ 35                              CONCLUSION

¶ 36    For the foregoing reasons, we hereby affirm the circuit court's judgment affirming the Board's denial of the petitioner's objection.


¶ 37    Affirmed.

2015 IL App (5th) 150028

NO. 5-15-0028

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| EMEKA JACKSON-HICKS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-MR-496 |
| | ) | |
| THE EAST ST. LOUIS BOARD OF ELECTION | ) | |
| COMMISSIONERS, and its Members, ELMER | ) | |
| D. JONES, Chairman, EDNA R. ALLEN, | ) | |
| Vice-Chairman, and JOSEPH McCASKILL, | ) | |
| Secretary; and ALVIN L. PARKS, JR., | ) | |
| Candidate for Mayor, | ) | Honorable |
| | ) | Heinz M. Rudolf, |
| Respondents-Appellees. | ) | Judge, presiding. |

_____

**Opinion Filed:** February 17, 2015
_____

**Justices:** Honorable S. Gene Schwarm, J.

Honorable Thomas M. Welch, J., and
Honorable James R. Moore, J.,
Concur
_____

**Attorney for Appellant** Eric W. Evans, Evans Blasi, 1512 Johnson Road, Granite City, IL 62040
_____

**Attorneys for Appellees** Garrett P. Hoerner, Becker, Paulson, Hoerner & Thompson, P.C., 5111 West Main Street, Belleville, IL 62226 (attorney for Alvin L. Parks, Jr.); Richard Sturgeon, Attorney at Law, 23 South First Street, Belleville, IL 62220 (attorney for Edna R. Allen, East St. Louis Board of Election Commissioners, Elmer D. Jones, Joseph McCaskill)
_____