ERIC F. VESTRUP, Plaintiff-Appellant, v. DU PAGE COUNTY ELECTION COMMISSION et al., Defendants-Appellees (George F. Bolz, Defendant and Objector-Appellee).

Second District   No. 2—02—1034

Opinion filed October 31, 2002.

Andrew B. Spiegel, of Hinsdale, for appellant.

Terry A. Ekl and Vincent C. Mancini, both of Connolly, Ekl & Williams, P.C., of Clarendon Hills, for appellee George F. Boltz.

Patrick K. Bond, of Bond, Mork & Dickson, of Wheaton, for other appellees.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Eric F. Vestrup, appeals from the order of the circuit court affirming the decision of the Du Page County Officers Electoral Board (Board) excluding Vestrup's name from the ballot as the Libertarian Party (LP) candidate for state representative for Representative District 47 in the 2002 general election. We affirm.

The following facts are undisputed. The LP candidate for state representative for Representative District 39 received 26.20% of the vote in the November 2000 general election. The map of the representative districts has since been redrawn. Portions of the former territory of District 39 now fall within the boundaries of Districts 41, 42, 47, 48, and 95.

The State Board of Elections' Candidate Guide for 2002 (the 2002 Candidate Guide) reads in pertinent part:

"The Libertarian Party received more than 5% of the number of votes cast at the November 2000 General Election in the 39th Representative District. Accordingly, to the extent the boundaries of the 39th Representative District are changed by legislative redistricting, the State Board of Elections will consider the Libertarian Party to be an established party in any representative district which includes any portion of the former 39th Representa-

tive District until directed to the contrary by a court of competent jurisdiction."

On May 20, 2002, Vestrup filed a petition with the State Board of Elections to fill the LP's vacancy in nomination for state representative for District 47 in the November 2002 general election. The petition was forwarded to the Du Page County Election Commission. George Boltz filed an objection to the petition, arguing that the LP is not an "established political party" (as defined by section 10—2 of the Illinois Election Code (Election Code) (10 ILCS 5/10—2 (West 2000)) in District 47 and therefore could not fill a vacancy in nomination. In response, Vestrup urged the Board to adopt the State Board of Elections' suggestion in the 2002 Candidate Guide that, for purposes of the November 2002 election, the LP is an established political party in all districts that include portions of the former District 39. Vestrup argued that the LP is an established political party in District 47 under section 10—2 because the LP polled more than 5% of the vote in District 39 in the 2000 general election for state representative and District 47 includes part of the geographic area of the former District 39.

The Board rejected the argument that the LP is an established political party in District 47:

"The fact that the 47th Representative District contained a portion of the former 39th Legislative District, in which a Libertarian candidate did poll 5% of the entire vote cast in the November 2000 General Election, does not elevate the Libertarian Party to 'established political party' status in the newly created 47th District."

The Board ruled that the LP could not nominate Vestrup in District 47 because the LP had failed to establish itself as a new political party in the district by submitting signatures as required by section 10—2 of the Code: "For the first election following a redistricting of representative districts, a petition to form a new political party in a representative district shall be signed by at least 1,500 qualified voters of the representative district" (10 ILCS 5/10—2 (West 2000)).

The trial court affirmed the Board's decision. We granted Vestrup's motion for an expedited review of his appeal. We affirm.

## ANALYSIS

■ The issue for review is whether the Board properly interpreted section 10—2 of the Election Code. This is a question of law, which we review *de novo. Stephens v. Education Officers Electoral Board, Community College District No. 504, Cook County*, 236 Ill. App. 3d 159, 161 (1992).

■ ■ Section 7—61 of the Election Code (10 ILCS 5/7—61 (West

2000)) provides that, where an established political party fails to nominate a candidate in the primary election, the party may fill that vacancy in nomination for the general election. See 10 ILCS 5/7—61 (West 2000). Section 10—2 provides two means by which a political party may become an "established political party" within the meaning of the Election Code. First, "[a] political party which, at the last general election for State and county officers, polled for its candidate for Governor more than 5% of the entire vote cast for Governor, is *** an 'established political party' as to the State and as to any district or political subdivision thereof." 10 ILCS 5/10—2 (West 2000). Second, a party who did not nominate a candidate for Governor in the last general election or whose candidate did not earn more than 5% of the vote in the last general election may still become an established political party within a particular district or political subdivision. Section 10—2 of the Election Code provides:

"A political party which, at the last election in any congressional district, legislative district, county, township, municipality or other political subdivision or district in the State, polled more than 5% of the entire vote cast within such territorial area or political subdivision, as the case may be, has voted as a unit for the election of officers to serve the respective territorial area of such district or political subdivision, is hereby declared to be an 'established political party' within the meaning of this Article as to such district or political subdivision." 10 ILCS 5/10—2 (West 2000) (hereinafter the establishment provision).

■ As noted by the Board, section 10—2 also describes the consequences that follow upon the redistricting of a representative district: "For the first election following a redistricting of representative districts, a petition to form a new political party in a representative district shall be signed by at least 1,500 qualified voters of the representative district." 10 ILCS 5/10—2 (West 2000) (hereinafter the signature provision).

Vestrup argues that, even though Districts 39 and 47 were redistricted since the 2000 election, the LP is not a new political party in District 47 because its performance in District 39 in the 2000 election made the LP an established political party in District 47 for the 2002 election.

We can best assess Vestrup's argument by analyzing it step-by-step. Vestrup begins with the uncontroversial premise that when a district or political subdivision "has voted as a unit for the election of officers to serve the respective territorial area of [a] district or political subdivision" and a political party wins 5% of the vote in that election, that party becomes an established political party within that district

or political subdivision for purposes of the next election. Vestrup then suggests, however, that the party's status as an established political party within that district or political subdivision does not endure only as long as that district or political subdivision retains its current boundaries. Rather, upon a change in the boundaries of that district or political subdivision, the party retains the status of an established political party within the geographic area of the former district or political subdivision. Vestrup's next premise is that the party gains the status of an established political party in any district or political subdivision that contains any portion of the geographic area of the former district or political subdivision. Applying this logic, Vestrup argues that the LP is an established political party in District 47 because (1) the LP won more than 5% of the vote in District 39 in the 2000 election and (2) part of the former District 39 is now in District 47.

■ The question for our review is whether Vestrup's argument has any foundation in the establishment provision of section 10—2. A court's primary goal in construing a statute is to ascertain and give effect to the intent of the legislature. *People v. Jurisec*, 199 Ill. 2d 108, 118 (2002). The most reliable indicator of the legislature's intent is the language of the statute itself. *People v. Lavallier*, 187 Ill. 2d 464, 468 (1999).

Before addressing the merits of Vestrup's claim, we must resolve a difficulty raised by the phrasing of the establishment provision of section 10—2. When the restrictive clause following "political party" is partially redacted, the provision reads, "A political party which *** has voted as a unit for the election of officers to serve the respective territorial area of [a] district or political subdivision[ ] is hereby declared to be an 'established political party' ***." 10 ILCS 5/10—2 (West 2000). Thus, the establishment provision apparently attaches legal consequences to a political party having "voted as a unit for the election of officers to serve the respective territorial area of [a] district or political subdivision."

Several canons of statutory construction persuade us that the legislature did not intend to attach any legal consequences to a political party having voted as a unit in an election. First, a court will presume that the legislature did not intend inconvenience, injustice, or absurdity and will favor an interpretation that renders the law reasonable and sensible over one that renders the law illogical and absurd. *People v. Stanciel*, 153 Ill. 2d 218, 233-34 (1992). We can fathom neither what the legislature could have meant by a political party "voting as a unit" in an election nor how a party's "voting as a unit" in an election could be relevant in determining whether that party is an established political party.

Significantly, nowhere else in the Election Code is there any reference to a political party "voting as a unit" in an election; only districts or political subdivisions are described as "voting as a unit." For instance, "district" is defined as "any area which votes as a unit for the election of any officer." 10 ILCS 5/1—3(14) (West 2000). Section 10—2 states that a petition to form a new political party in a district or political subdivision less than the State "shall be signed by qualified voters equaling in number not less than 5% of the number of voters who voted at the next preceding regular election in such district or political subdivision in which such district or political subdivision voted as a unit for the election of officers." 10 ILCS 5/10—2 (West 2000). In describing the nomination requirements for new independent candidates, section 10—3 of the Election Code twice refers to a district or political subdivision as "vot[ing] as a unit" in an election. 10 ILCS 5/10—3 (West 2000).

■ Statutes that relate to the same subject are considered to be governed by one spirit and a single policy and are construed together. *Dundee Township v. Department of Revenue*, 325 Ill. App. 3d 218, 223 (2001). The establishment provision of section 10—2 harmonizes with the rest of the Election Code only if interpreted as conditioning the status of "established political party" on whether a district or political subdivision voted as a unit in the last election, not on whether a political party had voted as a unit in that election. Our interpretation is guided also by the rule that, where a word or phrase is used in different sections of the same legislative act, a court presumes that the word or phrase is used with the same meaning throughout the act, unless a contrary legislative intent is clearly expressed. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 541 (1997). In our aim to harmonize the establishment provision with provisions elsewhere in the Election Code illustrating what entities the legislature presupposed could "vote as a unit," we interpret the establishment provision as making the status of "established political party" contingent on a political subdivision or district, not a political party, having voted as a unit in the last election.

Turning now to the merits of Vestrup's argument, we hold that his construction of the establishment provision of section 10—2 is misconceived. The establishment provision states that, where the voters in a "congressional district, legislative district, county, township, municipality or other political subdivision or district in the State" have "voted as a unit for the election of officers to serve the respective territorial area of such district or political subdivision," then a party that garnered more than 5% of that vote is considered an established political party "as to such district or political subdivision" for purposes

of the next election. 10 ILCS 5/10—2 (West 2000). The text is inescapable: if Vestrup would have us declare that the LP is an established political party in the current District 47 for purposes of the 2002 election, he must demonstrate that the LP garnered more than 5% of the votes in the last election when the current District 47 voted as a unit for the election of officers. The insurmountable difficulty for Vestrup is obvious: the current District 47 could not have voted as a unit in the last election because the current District 47 did not exist in the last election, or, to be more precise, District 47's boundaries were different in the last election.

Vestrup's claim that the LP's status as an established political party in District 39 survived redistricting and, Midas-like, conferred established party status on the LP in District 47 for purposes of the 2002 election rests on a fundamental misunderstanding of "territorial area" as used in the establishment provision. Vestrup suggests that "territorial area" means something over and above "district" or "political subdivision" such that the LP could continue to be an established political party within the geographic outline of the former District 39 once it ceased to be a "district" or "territorial area." We disagree. To emphasize our point we again set forth the language of the establishment provision:

"A political party which, at the last election in any congressional district, legislative district, county, township, municipality or other political subdivision or district in the State, polled more than 5% of the entire vote cast within *such territorial area or political subdivision*, as the case may be, has voted as a unit for the election of officers to serve the respective *territorial area of such district or political subdivision*, is hereby declared to be an 'established political party' within the meaning of this Article *as to such district or political subdivision*." (Emphasis added.) 10 ILCS 5/10—2 (West 2000).

"Territorial area" is used twice in this provision. Its first appearance is merely as a surrogate term for the long list of various political subdivisions listed previously in the restrictive clause. Tellingly, it is linked with "political subdivision," suggesting synonymity for purposes of the provision. Where "territorial area" next appears, it is, as Vestrup claims, employed to describe the geographic scope of a district or political subdivision. However, in our view this use of "territorial area" merely was to underscore the necessity that the *entire* district or political subdivision voted as a unit in the last election for a party to qualify for the status of established political party in that district or political subdivision. This use of "territorial area" does not, contrary to Vestrup's contention, confer any talismanic effect on the

geographic area of a district or political subdivision. Such is evident from the predicate of the provision, which confers established party status with respect to districts or political subdivisions but does not mention territorial areas. The absence of "territorial area" in this part of the establishment provision despite its presence elsewhere leads us to conclude, under the rule of *expressio unius est exclusio alterius*, that the legislature intended to confer established party status with respect to districts and political subdivisions, not geographic areas defined independently of political boundaries. See *People v. Ward*, 326 Ill. App. 3d 897, 902 (2002) ("A cardinal rule of statutory interpretation is *expressio unius est exclusio alterius*, which means that the enumeration of certain matters in a statute implies the exclusion of all others").

■ In our view, the establishment provision of section 10—2 provides that a political party has the status of an established political party in any of several enumerated districts or political subdivisions if, when that district or political subdivision voted as a unit for the election of officers in the last election, that party polled more than 5% of the vote. That status, we emphasize, is conferred with respect to districts and political subdivisions, not geographic areas that exist independently of districts and political subdivisions. Necessarily, then, a party's status as an established political party in a particular representative district does not outlast in any fashion the existence of that district once it has been altered by redistricting. As for what a political party must do to obtain a place on the ballot after redistricting, there are specific provisions in the Election Code addressing the consequences of redistricting.

■ Applying these principles to the facts at hand yields the following analysis. There is no dispute that District 39 voted as a unit in the 2000 general election and that the LP candidate for state representative earned more than 5% of the vote in the district. Hence, the LP would have been an established political party in District 39 for the 2002 general election. The LP never reaped the fruit of that status, however, because District 39 was redistricted before the 2002 election. District 47 also was redistricted since the last election. Since, due to redistricting, District 47 has not yet voted as a unit for the election of officers, the establishment provision has not conferred the status of established political party on the LP with respect to the 2002 general election in District 47.

We recognize that "ballot access is a substantial right and not lightly to be denied" (*Reyes v. Bloomingdale Township Electoral Board*, 265 Ill. App. 3d 69, 71 (1994)). We are mindful, too, of "the need to tread cautiously when construing statutory language which restricts

the people's right to endorse and nominate the candidate of their choice." *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997). Yet, while restrictions on the access of political parties to the ballot implicate rights under the United States Constitution, even that document has been interpreted by the United States Supreme Court as permitting a State to "condition access to the general election ballot by a minor-party or independent candidate upon a showing of a modicum of support among the potential voters for the office." *Munro v. Socialist Workers Party*, 479 U.S. 189, 193, 93 L. Ed. 2d 499, 504-05, 107 S. Ct. 533, 536 (1986); *cf. Huskey v. Municipal Officers Electoral Board*, 156 Ill. App. 3d 201, 206 (1987) (the purpose of conditioning ballot access on a candidate's obtaining voter signatures is "to reduce the electoral process to manageable proportions by confining ballot positions to a relatively small number of candidates who have demonstrated initiative and at least a minimal appeal to eligible voters"). Our view is that to reject Vestrup's construction of the establishment provision is to uphold all of the cherished values emphasized above. Vestrup would have us read the establishment provision as granting a political party the status of an established political party in any district that includes any piece of a former district in which that party earned over 5% of the vote in the last election, regardless of what level of voter support the party garnered in the last election in the overlapping portion or in the remaining geographic area comprising the new district. But this would permit a political party to spread from ballot to ballot not through a proportionate showing of public support but through the unpredictable processes of redistricting. This would undermine, not vindicate, "the people's right to endorse and nominate the candidate of their choice." *Lakin*, 175 Ill. 2d at 176.

We recognize that the effect of our decision is that established political parties that are less than statewide established political parties lose their status as established political parties when the district or political subdivision in which they were established ceases to exist. A party that loses its established party status must proceed under the provisions in section 10—2 that deal specifically with establishing a new political party following redistricting. See 10 ILCS 5/10—2 (West 2000).

■Vestrup next argues that, whatever our reading of the establishment provision, defendants are estopped from challenging his nomination. Vestrup reasons that because he forwent the gathering of signatures in reliance on the State Board of Elections' remark that the LP is an established political party in any representative district that contains some of the old District 39, defendants cannot argue that he should have obtained the signatures. Vestrup relies on *Merz v.*

*Volberding*, 94 Ill. App. 3d 1111 (1981), decided by the First District Appellate Court. In *Merz*, the appellants appealed the dismissal of their objections to the appellees' nominations for city offices. The appellants argued that the appellees failed to gather the requisite signatures under section 10—3 of the Election Code. The appellees claimed they relied on an information sheet issued by the city clerk in gathering their signatures. After a long analysis of section 10—3, the appellate court concluded that the information sheet conflicted with section 10—3 and that the appellees failed to comply with the statute. However, because the relevant statutory provision was not "unambiguous and clear on its face" but in fact "almost incomprehensible," the court held that the appellees had justifiably relied on the information sheet. *Merz*, 94 Ill. App. 3d at 1115, 1118.

We decline to follow *Merz*. In holding that the State was estopped from enforcing its nomination requirements against the appellees, the *Merz* court failed altogether to acknowledge the specific rules regarding estoppel against the State. Courts are reluctant to find the State estopped from enforcing its laws. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 431 (1996). This reluctance is "motivated by the concern that doing so 'may impair the functioning of the State in the discharge of its government functions, and that valuable public interests may be jeopardized or lost by the negligence, mistakes or inattention of public officials.' " *Brown's Furniture*, 171 Ill. 2d at 431-32, quoting *Hickey v. Illinois Central R.R. Co.*, 35 Ill. 2d 427, 447-48 (1966). Estoppel is applied against the State only to prevent fraud and injustice. *Brown's Furniture*, 171 Ill. 2d at 431.

Far from preventing fraud or injustice, our applying estoppel against the State in this case would abrogate the people's right to nominate the candidates of their choice in Illinois representative districts. Vestrup claims he relied to his detriment on the State Board of Elections' interpretation of section 10—2, but that construction was expressly qualified with the caveat that it was subject to review by a court of competent jurisdiction. We are such a court. Vestrup chose to rely on the State Board of Elections' interpretation of section 10—2 despite having been advised that a court might reject that interpretation, and, therefore, we cannot say his reliance gave rise to an injustice in this case.

An equally decisive ground for rejecting Vestrup's argument is that our following *Merz* would be a concession that an administrative agency's mistaken interpretation of a state statute can preclude a court from enforcing that statute. Essentially, Vestrup would have us give an interpretative error the force of law and precedence over the law as enacted by the elected lawmakers of the State of Illinois. This

is entirely unacceptable, especially because that interpretative error would cost the voters of representative districts in Illinois their opportunity to nominate the candidates of their choice.

We recognize that "deference is generally accorded the construction placed on a statute by an agency given the authority to administer that statute." *Schober v. Young*, 322 Ill. App. 3d 996, 999 (2001). Still, courts are not bound by an agency's erroneous construction of a statute. *Schober*, 322 Ill. App. 3d at 999. The State Board of Elections' construction of section 10—2 was erroneous, warranting our departure from it.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON, P.J., and KAPALA, J., concur.