2022 IL App (1st) 220678

SIXTH DIVISION
June 7, 2022

No. 1-22-0678

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| SUSAN F. HUTCHINSON; MARK CURRAN; and NANCY RODKIN ROTERING, | ) ) ) | |
| Petitioners-Appellees, | ) ) ) | |
| v. | ) ) | |
| THE ILLINOIS STATE BOARD OF ELECTIONS, in its Capacity as the State Officers Electoral Board; IAN LINNABARY, CASSANDRA B. WATSON, WILLIAM J. CADIGAN, LAURA KENT DONAHUE, TONYA L. GENOVESE, CATHERINE S. McCRORY, WILLIAM M. McGUFFAGE, and RICK S. TERVEN, SR., in Their Official Capacities as Members of the State Officers Electoral Board; ALAN SPELLBERG; CACILIA MASOVER; NANCY WAITES; JOE TIRIO, McHenry County Clerk, in His Capacity as the Local Election Authority of McHenry County; JOHN A. CUNNINGHAM, Kane County Clerk, in His Capacity as the Local Election Authority of Kane County; DEBBIE GILLETTE, Kendall County Clerk, in Her Capacity as Local Election Authority for Kendall County; ROBIN M. O'CONNOR, Lake County Clerk, in Her Capacity as the Local Election Authority; and DOUGLAS J. JOHNSON, DeKalb County Clerk, in His Capacity as the Local Election Authority, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County  No. 22 COEL 9  The Honorable Maureen O. Hannon Judge Presiding. |
| Respondents, | ) ) | |
| (Alan Spellberg, Cacilia Masover, and Nancy Waites, Respondents-Appellants). | ) ) | |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Gordon and Oden Johnson concurred in the judgment and opinion

**OPINION**

¶ 1     This appeal requires us to interpret subsection (h) of section 7-10 of the Election Code (10 ILCS 5/7-10(h) (West 2020)). That subsection sets the minimum number of signatures petitioners, Susan F. Hutchinson, Mark Curran, and Nancy Rodkin Rotering (candidates), were required to submit to appear on the ballots for their respective parties in the upcoming June 28, 2022, General Primary Election. Candidates are seeking their respective parties' nomination for the Second Judicial District's seat on the Illinois Supreme Court. Respondents, Alan Spellberg, Cacilia Masover, and Nancy Waites (objectors), objected to the candidates' nomination papers on the basis that they contained too few signatures. A hearing officer recommended that the candidates' names appear on the primary ballots. The Illinois State Board of Elections (Board) rejected the hearing officer's recommendation, found that the candidates had not submitted enough signatures, and ordered their names not to appear on the ballots. On judicial review, the circuit court of Cook County reversed the Board's decision. Objectors have filed an appeal to this court. For the following reasons, we agree with the circuit court that the Board's decision rests on an incorrect interpretation of section 7-10(h). We find that the candidates have submitted sufficient signatures and that their names should appear on the primary ballots. We therefore reverse the decision of the Board and affirm the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3                                    A. The Election Code

¶ 4     Section 7-10(h) of the Election Code provides, in relevant part,

   "Except as otherwise provided in this Code, if a candidate seeks to run for judicial office

   in a district, then the candidate's petition for nomination must contain the number of

signatures equal to 0.4% of the number of votes cast in that district for the candidate for his or her political party for the office of Governor at the last general election at which a Governor was elected, but in no event less than 500 signatures." 10 ILCS 5/7-10(h) (West 2020).

¶ 5    Section 1-3(14) of the Election Code defines "district" as

"any area which votes as a unit for the election of any officer, other than the State or a unit of local government or school district, and includes, but is not limited to, legislative, congressional and judicial districts, judicial circuits, county board districts, municipal and sanitary district wards, school board districts, and precincts." 10 ILCS 5/1-3(14) (West 2020).

¶ 6    In 2021, the General Assembly enacted the Illinois Judicial Districts Act of 2021 (Pub. Act 102-11, § 1 (eff. June 4, 2021) (adding 705 ILCS 23/1 *et seq.*)), which redistricted the Second Judicial District to include only five counties: DeKalb, Kane, Kendall, Lake, and McHenry. Pub. Act 102-11, § 15 (eff. June 4, 2021) (adding 705 ILCS 23/15). Prior to redistricting, the Second Judicial District included those five counties and Boone, Carroll, DuPage, Jo Davies, Lee, Ogle, Stephenson, and Winnebago counties.

¶ 7    Also in 2021, the General Assembly amended the Election Code to add section 2A-1.1b(b), which provides that, for the 2022 General Primary Election, the signature requirement for an established party candidate for specific offices, including the Illinois Supreme Court, would be reduced by one-third. Pub. Act 102-15 § 5 (eff. June 17, 2021) (adding 10 ILCS 5/2A-1.1b). The parties agree that that section 2A-1.1b(b) applies, and that, whatever the minimum signature requirement is under section 7-10(h), that amount is reduced by one-third for the 2022 primary election.

3

¶ 8                              B. Proceedings Before the Board

¶ 9      The facts are not in dispute. Hutchinson and Curran filed nomination papers seeking the Republican nomination in the Second Judicial District for the vacant seat on our supreme court. Rotering filed nomination papers seeking the Democratic nomination for that seat. Hutchinson's and Curran's nomination papers contained 702 signatures and 670 signatures, respectively. Rotering's nomination papers contained 669 signatures.

¶ 10     Objectors challenged the candidates' nomination papers, asserting that under sections 7-10(h) and 2A-1.1b(b) of the Election Code, Hutchinson and Curran were required to submit 757 signatures and Rotering was required to submit 791 signatures. Objectors' signature counts were based on the votes cast for the Republican and Democratic candidates for governor at the 2018 general election in the five counties now comprising the Second Judicial District, multiplying that number, by .004 (0.4%) and reducing by one-third. A hearing officer was assigned, and the parties filed cross-motions for summary judgment. A hearing was held on April 9, 2022, and the hearing officer heard oral argument.

¶ 11     On April 15, 2022, the hearing officer made written findings and recommendations. The hearing officer reasoned that the redrawn Second Judicial District did not exist at the time of the last gubernatorial election, so the redrawn Second Judicial District did not vote as a unit at that election. Therefore, the catchall provision in section 7-10(h), requiring a minimum of 500 signatures and reduced by one-third for the 2022 primary to 334 signatures, applied. Each candidate obtained more than 334 signatures. The Second District's decision in *Vestrup v. Du Page County Election Commission*, 335 Ill. App. 3d 156 (2002) (interpreting section 10-2 of the Election Code) was on point and stood for the proposition that when a district is redrawn, the redrawn district cannot be said to have voted as a district at a prior election because it did not exist at the

4

last election. Here, the Election Code's definition of "district" supported the candidates' position that the redrawn Second Judicial District had never voted as a unit. The hearing officer recommended that the Board overrule the objectors' petitions, grant the candidates' motion for summary judgment, deny the objectors' cross-motion for summary judgment, deny all the remaining arguments in both parties' motions, and order the candidates' names to appear on the primary ballots.

¶ 12    For "completeness," the hearing officer considered and rejected the candidates' argument that the Board should "give deference" to the Board's 2022 Candidate Guide, which stated that the signature minimum was 334 signatures, because the supreme court in *Corbin v. Schroeder*, 2021 IL 127052, rejected the notion that estoppel or reliance arguments can overcome the Election Code's signature requirements, which are mandatory and require strict and substantial compliance.

¶ 13    Both parties filed exceptions with the Board. On April 21, 2022, the Board issued its decision and on April 22, 2022, issued an amended decision rejecting the hearing officer's findings and recommendations. The Board found that section 7-10(h) required that a Democratic candidate in the Second Judicial District submit 791 signatures and a Republican candidate submit 757 signatures, which the Board found should be "calculated by combining 0.4% of the number of votes cast in each county comprising the redrawn Second Judicial District, for the candidate for his or her political party for the office of Governor at the 2018 General Election, reduced by one third." The three candidates each failed to submit enough signatures to appear on the primary ballots, based on this calculation. The Board granted objectors' motion for summary judgment, denied the candidates' motion for summary judgement, sustained the objections to the candidates' nomination papers, and ordered the candidates' names not to appear on the primary ballots.

¶ 14                                    C. Circuit Court Proceedings

¶ 15    On April 22, 2022, the candidates filed a petition for judicial review in the circuit court of Cook County. Objectors filed a response on May 9, 2022. On May 12, 2022, the circuit court entered a written order reversing the Board's decision. The circuit court found that nothing in section 7-10(h) "directs the candidates to calculate the minimum number of signatures by adding the vote totals in the counties that make up the newly configured Second Judicial District." Instead, the Election Code requires the signature calculation

> "to be made based on the 'number of signatures equal to 0.4% of the number of votes cast *in that district* for the candidate for his or her political party for the office of Governor *at the last general election* ***.' *** The new Second District did not vote in the last election." (Emphases in original.)

¶ 16    Further, the Board's 2022 Candidate Guide used the catchall provision in section 7-10(h)—requiring the signature requirement be no less than 500—as the signature minimum, reduced by one-third to 334. See Illinois State Board of Elections, 2022 Candidate Guide, available at https://www.elections.il.gov/DocDisplay.aspx?Doc=/Downloads/ElectionOperations/PDF/2022CanGuide.pdf&MID=383 (last visited June 6, 2022). The Board was the administrative agency that certified results for elections and "if the State Board thought that the signature requirement post-districting would be calculated by tabulating the votes in each [c]ounty [in the redrawn Second Judicial District], it had the exact numbers and could have made that calculation in its Candidate's Guide for 2022." The Board's interpretation of the Election Code in the Candidate's Guide was entitled to substantial weight and deference—as it is the administrative agency charged with administering the Election Code—its interpretation was not unreasonable, and its conclusion was "persuasive." Finally, to the extent section 7-10(h) was ambiguous and the

6

parties submitted competing, reasonable constructions of the statute, Illinois public policy favoring ballot access supported the candidates. The circuit court reversed the Board's decision and ordered the candidates' names to appear on the primary ballots. On May 16, 2022, the circuit court denied objectors' motion to stay enforcement of the circuit court's judgment. Objectors filed a notice of appeal on May 16, 2022. Objectors did not renew their motion to stay enforcement of the circuit court's judgment in this court.

¶ 17    We granted objectors' motion for an accelerated docket and ordered the parties to brief this appeal on an expedited basis.

¶ 18                                II. JURISDICTION

¶ 19    The Board entered its final decision on April 22, 2022. The candidates filed their petition for judicial review in the circuit court on April 22, 2022, which was timely under section 10-10.1 of the Election Code (10 ILCS 5/10-10.1(a) (West 2020)). The circuit court entered its final judgment on May 12, 2022, and objectors filed their notice of appeal on May 16, 2022, which was timely under Illinois Supreme Court Rule 303(a) (eff. July 1, 2017). We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303, governing appeals from final judgments entered by the circuit court in civil cases.

¶ 20                                III. ANALYSIS

¶ 21    On appeal, objectors assert the circuit court erred by reversing the Board's decision. They argue that, because judicial districts must "be compact and composed of contiguous counties" (Ill. Const. 1970, art. VI, § 2), section 7-10(h)'s minimum signature requirement can be calculated by looking at the voting data from the counties now comprising the redrawn Second Judicial District. They contend section 7-10(h) is plain and unambiguous, and if the legislature intended for a different signature calculation to apply in the first primary election following redistricting, it would

have said so. They point to several other provisions of the Election Code, which provide for either a specific signature requirement or a specific signature calculation in the first election following redistricting, to argue the legislature never intended a different method of calculating the signature requirement post-redistricting. They argue that nothing in the plain language or legislative history of section 7-10(h) suggests the legislature intended that a judicial district must have previously voted as a unit to apply the statutory calculation. They argue *Vestrup* is distinguishable and does not control the outcome here. Objectors also contend the Board's 2022 Candidate's Guide is entitled to no deference, as the supreme court in *Corbin* made it plain that statutory signature requirements are mandatory and are not subject to reliance or estoppel arguments. They request that we affirm the Board's decision and order that the candidates' names not appear on the primary ballots.

¶ 22   "When an election board's decision is challenged in the circuit court pursuant to section 10-10.1 of the Election Code ***, the proceeding is one of administrative review." *Jones v. Municipal Officers Electoral Board for the City of Calumet City*, 2021 IL 126974, ¶ 12. We review the Board's decision, not the judgment of the circuit court. *Id.*

¶ 23   Our standard of review of the Board's decision depends on the question presented. *Corbin*, 2021 IL 127052, ¶ 32. Here, the Board was faced with a question of statutory interpretation: how section 7-10(h) should be interpreted in the first primary election following redistricting of the judicial districts to determine the requisite number of signatures a candidate must submit to appear on the primary ballot. The proper interpretation of a statute is a question of law that we review *de novo*. *Cook v. Illinois State Board of Elections*, 2021 IL 125386, ¶ 51.

¶ 24   When construing a statute, the "primary objective is to ascertain and give effect to the intent of the legislature." *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL

8

118929, ¶ 21. The best indicator of legislative intent is the plain language of the statute. *Id.* "When statutory language is plain and unambiguous, the statute must be applied as written without resort to aids of statutory construction, and the court will not read into it exceptions, conditions, or limitations that the legislature did not express." (Internal citations omitted.) *Id.*

¶ 25    We begin by looking at the plain language of the relevant statutory provisions. The first clause of section 7-10(h) provides, "[e]xcept as otherwise provided in this Code, if a candidate *seeks to run* for judicial office *in a district* ***." (Emphases added.) 10 ILCS 5/7-10(h). The first clause of subsection (h) is in the simple future tense: a candidate is going to run for judicial office in a district. It follows—without controversy—that the district in which the candidate seeks to run is the district as it is composed at the time of the primary election. The Election Code provides a definition of "district," which is "any area which votes as a unit for the election of any officer," including judicial districts. 10 ILCS 5/1-3(14). It is undisputed that the redrawn Second Judicial District in which the candidates seek to run currently comprises 5 counties, whereas the previously drawn Second Judicial District comprised 13 counties. The redrawn Second Judicial District has never voted as a unit at any previous election because the redrawn Second Judicial District did not exist until the legislature redistricted the judicial districts in 2021. The redrawn Second Judicial District will vote as a unit—for the first time—at the 2022 primary election.

¶ 26    The second clause of subsection (h)—"then the candidate's petition for nomination must contain the number of signatures equal to 0.4% of the number of votes cast *in that district* for the candidate for his or her political party for the office of Governor *at the last general election* at which a Governor was elected" (emphases added)—must be read in connection with the first clause. The phrase "that district" in the second clause refers directly to the "district" identified in the first clause: the district in which the candidate will seek to run. The calculation in the second

clause of subsection (h)—multiplying the number of votes cast in the district for an established party's candidate for Governor at the last election by 0.4%—is only possible where the district in which the candidate is seeking to run voted as a district at the last general election involving a gubernatorial election. That is not possible here.

¶ 27 Subsection (h) does not provide any alternative formula for calculating the signature requirement in the first primary election following redistricting. It does, however, contain a catchall provision requiring an absolute minimum of 500 signatures. Because the Second Judicial District did not vote in the last election and the legislature made no specific alternative calculus for the first primary election following redistricting, we look to the requirement that a petition be supported by no fewer than 500 signatures, which would be reduced for this election by one-third to 334.

¶ 28 We are not persuaded by any of objectors' arguments to the contrary. Objectors contend that we should calculate the number of signatures based on votes cast in the counties comprising the redrawn Second Judicial District. But this ignores the statutory language that links the signature requirement to the "district," rather than to its component parts. A judicial district is of course composed of counties, but a judicial district composed of one set of counties one year and another set of counties in another year is simply not the same judicial "district."

¶ 29 Objectors make the following assertion:

"Even though the Second Judicial District now votes as a unit (present tense), its signature calculation formula does not depend on it having voted as a unit (past tense) in an election prior. Put another way, and adding the verbiage from [section] 1-3(14) [of the Election Code], the signature formula in [section] 1-3(14) asks: how many votes were cast in this '*area* which votes as a unit' in the gubernatorial election. We know exactly how many

votes were cast in 2018 in the area that constitutes the Second Judicial District. Conversely, [section] 7-10(h) does not ask for the number of votes cast in an area that *voted* as a unit in the last gubernatorial election." (Emphases in original.)

¶ 30    We disagree. The legislature's use of the term "that district" in the phrase "votes cast in that district" specifically refers to the district in which the candidate seeks to run. At bottom, objectors' argument is premised on the divisibility of a judicial district into its component counties and the notion the "district" means two different things within section 7-10(h). We believe objectors' reading of the statute is at odds with its plain language.

¶ 31    This court's decision in *Vestrup* supports our reading of the Election Code. There, Eric Vestrup sought to run as the Libertarian Party (LP) candidate for state representative in Representative District 47 in the 2002 general election. *Vestrup*, 335 Ill. App. 3d at 158. An objector challenged Vestrup's nomination papers, asserting that the LP was not an established political party under section 10-2 of the Election Code, which provided:

"A political party which, at the last election in any congressional district, legislative district, county, township, municipality or other political subdivision or district in the State, polled more than 5% of the entire vote cast within such territorial area or political subdivision, as the case may be, has voted as a unit for the election of officers to serve the respective territorial area of such district or political subdivision, is hereby declared to be an 'established political party' within the meaning of this Article as to such district or political subdivision." 10 ILCS 5/10-2 (West 2002).

¶ 32    Vestrup argued that District 47 contained a portion of the former Representative District 39, and that the LP's "performance in District 39 in the 2000 election made the LP an established political party in District 47 for the 2002 election." *Vestrup*, 335 Ill. App. 3d at 160. An electoral

board rejected Vestrup's argument and found the LP could not nominate Vestrup in District 47 because it was not an established political party in District 47. *Id.* at 159. The circuit court affirmed on administrative review (*id.*), and the Second District likewise affirmed the electoral board's decision. In relevant part, the *Vestrup* court wrote:

"The text [of section 10-2] is inescapable: if Vestrup would have us declare that the LP is an established political party in the current District 47 for purposes of the 2002 election, he must demonstrate that the LP garnered more than 5% of the votes in the last election when the current District 47 voted as a unit for the election of officers. The insurmountable difficulty for Vestrup is obvious: the current District 47 could not have voted as a unit in the last election because the current District 47 did not exist in the last election, or, to be more precise, District 47's boundaries were different in the last election." *Id.* at 163.

¶ 33    The court in *Vestrup* recognized, and we fully agree, that after redistricting, the district—a voting unit—cannot be said to have previously voted. Where the statutory language tethers the minimum signature requirement to the existence of the district, the district must have existed at the time of the last election. Again, the district at issue here—the redrawn Second Judicial District—did not exist at the last election, which means we must look to the statutory minimum in section 7-10(h), unless the legislature provided an alternative calculation.

¶ 34    This leads us to objectors' other main argument, which is that their reading of subsection (h) of section 7-10 is necessary because that subsection is silent as to how to calculate signature minimums following redistricting, although other subsections of section 7-10 expressly provide specific formulas for calculating signature requirements in the first election following redistricting. They point to, among others, subsection (b), which governs federal congressional offices or delegates to a national nominating convention, and provides that a candidate needs signatures

"equal to 0.5% of the qualified primary electors or his or her party in his or congressional district," but in the first primary following a redistricting of congressional districts, the candidate needs at least 600 signatures of qualified primary electors of the candidate's political party. 10 ILCS 5/7-10(b) (West 2020); see also 10 ILCS 5/7-10(c), (d)(2)-(3), (e), (g) (specifying minimum signature requirements in the first primary election following redistricting of county board districts, Cook County Board of Commissioner and Cook County Board of Review districts, ward or trustee districts of municipalities, and sanitary districts, based either on a formula or a specific number).

¶ 35    Objectors contend that, applying the *expressio unius est exclusio alterius* maxim of statutory construction, "where the legislature has explicitly provided an exception following redistricting for offices throughout [section] 7-10, but has not explicitly provided that same exception for Judicial Districts, no exception exists."

¶ 36    Objectors' arguments miss the mark. The candidates do not assert that the Board should use an "exception" for determining signature minimums because the Second Judicial District has been redrawn. Rather, the candidates point to the fact that the calculation method in subsection (h) would result in zero, since this "district" did not vote as a unit in the last election. Thus, the provision in subsection (h), setting forth the minimum number of signatures required—500— becomes applicable. The 500 would be reduced for this election by one-third to 334.

¶ 37    In our view, objectors' argument regarding alternative calculations in other subsections of section 7-10 only underscores the fact that, where the legislature intended to impose a specific alternative formula following redistricting, it did so. The objectors' alternative formulation, based on component counties of the old and new Second Judicial District, is indeed a feasible way to come up with a minimum number of signatures, but it is not one that the legislature has  provided.

¶ 38    Objectors point to the fact that subsection (h) was amended in 2005 to impose different minimum signature requirements for candidates running in judicial districts than for those running in judicial circuits and subcircuits. Pub Act. 94-645, § 5 (amending 10 ILCS 5/7-10) (eff. Aug. 22, 2005). Prior to the amendment, subsection (h) provided:

"If a candidate seeks to run for judicial office in a district, circuit, or subcircuit, then the candidate's petition for nomination must contain the number of signatures equal to 0.25% of the number of votes cast for the judicial candidate of his or her political party who received the highest number of votes at the last general election at which a judicial officer from the same district, circuit, or subcircuit was regularly scheduled to be elected, but in no event less than 500 signatures." 10 ILCS 5/7-10(h) (West 2004).

¶ 39    The legislature amended subsection (h) to provide:

"If a candidate seeks to run for judicial office in a district, then the candidate's petition for nomination must contain the number of signatures equal to 0.4% of the number of votes cast in that district for the candidate for his or her political party for the office of Governor at the last general election at which a Governor was elected, but in no event less than 500 signatures. If a candidate seeks to run for judicial office in a circuit or subcircuit, then the candidate's petition for nomination must contain the number of signatures equal to 0.25% of the number of votes cast for the judicial candidate of his or her political party who received the highest number of votes at the last general election at which a judicial officer from the same circuit or subcircuit was regularly scheduled to be elected, but in no event less than 500 signatures." (Emphasis added.) Pub. Act 94-645 § 5 (eff. Aug. 22, 2005) (amending 10 ILCS 5/7-10(h)).

14

¶ 40    Objectors contend that, due to this amendment, "for the first time, judicial districts' formula [*sic*] was not tied to having voted as a unit previously," and is thus an indication of the legislature's intent that a district need not have voted as a unit at the last election. But nothing about this amendment suggests that it altered the definition of "district" in section 1-3 of the Election Code. In the amended statute, the legislature simply tethered the minimum signature requirement for judicial candidates running district wide to the votes cast for Governor by the candidate's party, rather than, as it did for judges running circuit or subcircuit wide, to votes cast for that judicial office. This does not alter the definition of district as being an area that votes as a unit.

¶ 41    Objectors also contend that applying the Election Code's general definition of a district as being an area that votes "as a unit" in the context of section 7-10(h) would lead to absurd results and render portions of the Election Code superfluous because "a myriad" of other provisions of the Election Code refer to specific situations in which a district must have voted "as a unit." Objectors fail to describe any absurd result. Objectors also fail to explain why the fact that the Election Code refers to specific situations in which a district or a city or a county voted "as a unit" renders the definition of a "district" either superfluous or inapplicable in this case.

¶ 42    Finally, we briefly address the Board's 2022 Candidate's Guide. Before the Board, the candidates argued, in addition to their statutory construction arguments, that the Board, as the administrative agency tasked with administering the Election Code, should defer to its own interpretation in the Candidate's Guide that the signature minimum was 334 signatures. The candidates carefully pointed out that they were not asserting any sort of estoppel or reliance argument: they were *not* arguing that the Board was bound by any erroneous interpretation of the minimum signature requirement, nor were they arguing that they justifiably relied on the information in the Candidate's Guide and should be given a pass if that information was wrong.

15

They acknowledged that such arguments were foreclosed by our supreme court's decision in *Corbin*. Instead, the candidates took the position that the information in the Candidate's Guide amounted to an agency interpretation of the statute, which should be afforded deference. Objectors point out that the Candidate's Guide contains a clear warning that it is not to be relied on and that, unlike the Board's ruling in this case, it does not represent the considered view of the Board as a whole. We need not decide whether the Board's guidance in the Candidate's Guide was an agency interpretation entitled to any deference because our *de novo* review of the statutory provision leads to the conclusion that the number of signatures required to satisfy section 7-10(h) is 334 signatures, which is the 500 minimum in subsection (h), reduced by one-third for this election.

¶ 43                                    III. CONCLUSION

¶ 44    The candidates each submitted enough signatures to appear on the ballots seeking their respective parties' nomination for a seat on our supreme court. The circuit court's judgment reversing the Board's decision and ordering the candidates' names to appear on the ballots is affirmed.

¶ 45    Circuit court judgment affirmed.

¶ 46    Board decision reversed.

**No. 1-22-0678**

| | |
|---|---|
| **Cite as:** | *Hutchinson v. The Illinois State Board of Elections*, 2022 IL App (1st) 220678 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2022 COEL 9, the Hon. Maureen O. Hannon, Judge Presiding. |
| **Attorneys for Appellant:** | John G. Fogarty, Jr. of the Law Office of John Fogarty, Jr. of Chicago, and Michael C. Dorf of The Law Offices of Michael C. Dorf, LLC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Keri-Lyn J. Krafthefer and Daniel J. Bolin of Ancel Glink, PC, of Chicago, Mark C. Curran, Jr. of Libertyville, Michael Kreloff of Northbrook, and Ed Mullen of the Westside Justice Center of Chicago, for appellees. |