2023 IL App (1st) 230203, 23-0204, & 23-0205 (consolidated)-U

SECOND DIVISION
February 21, 2023

Nos. 1-23-0203, 1-23-0204, & 1-23-0205 (cons.)

**NOTICE:**  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| DANIEL R. HORWITCH, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
|     Plaintiff-Appellant/Objector, | ) | |
| | ) | |
| v. | ) | |
| | ) | Nos. 23COEL4, 23COEL5, 23COEL6 |
| THE CHICAGO BOARD OF ELECTION | ) | (consolidated) |
| COMMISSIONERS, as a duly constituted electoral | ) | |
| board, and its Chair MARISEL A. HERNANDEZ, | ) | |
| Commissioner WILLIAM J. KRESSE, and | ) | |
| Commissioner JUNE A. BROWN; THE CHICAGO | ) | The Honorable |
| BOARD OF ELECTION COMMISIONERS in its | ) | Rena Marie Van Tine, |
| capacity as election authority for the City of | ) | Judge Presiding. |
| Chicago; SAMUEL E. SCHOENBURG, | ) | |
| MAURILLO GARCIA, and JENNIFER A. | ) | |
| SCHAFFER, | ) | |
| | ) | |
|     Defendants-Appellees. | ) | |
| _____ | ) | |
| TRACY NICOLE ARRIAGA, | ) | |
| | ) | |
|     Plaintiff-Appellant/Objector, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CHICAGO BOARD OF ELECTION | ) | |
| COMMISSIONERS, as a duly constituted electoral | ) | |
| board, and its Chair MARISEL A. HERNANDEZ, | ) | |
| Commissioner WILLIAM J. KRESSE, and | ) | |
| Commissioner JUNE A. BROWN; THE CHICAGO | ) | |

Nos. 1-23-0203, 1-23-0204, & 1-23-0205 (cons.)

BOARD OF ELECTION COMMISIONERS in its )
capacity as election authority for the City of )
Chicago; DARRELL DACRES, DEIDRE )
O'CONNER, and ANNA RUBIN, )
                          )
     Defendants-Appellees. )
_____)
MITCHELL D. ROSE, )
                          )
      Plaintiff-Appellant/Objector, )
                          )
v. )
                          )
THE CHICAGO BOARD OF ELECTION )
COMMISSIONERS, as a duly constituted electoral )
board, and its Chair MARISEL A. HERNANDEZ, )
Commissioner WILLIAM J. KRESSE, and )
Commissioner JUNE A. BROWN; THE CHICAGO )
BOARD OF ELECTION COMMISIONERS in its )
capacity as election authority for the City of )
Chicago; VERONICA I. ARREOLA, EDVETTE )
W. JONES, and MARILYN PAGAN-BANKS, )
                          )
     Defendants-Appellees. )

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.

Justices Howse and Ellis concurred in the judgment.

**ORDER**

*HELD*: Board's decision overruling objectors' challenge and allowing candidates for member of police district council to remain on respective ballots is affirmed.

¶ 1      Plaintiffs-appellants Daniel R. Horwitch, Tracy Nicole Arriaga and Mitchell D. Rose (objectors or as named) appeared before this court upon a motion for expedited briefing schedule and decision related to the general municipal election for Member of Police District

2

Council for Chicago Police Districts 19, 20 and 24 to be held on February 28, 2023.  This court granted their motion.  Upon review of this cause, we issue the instant decision.

¶ 2    For the first time, at said election, each of Chicago's police districts will elect three members to their police district councils, pursuant to the newly created Community Commission for Public Safety and Accountability.  Municipal Code of Chicago, §§ 20-80-020, 20-80-070.  Candidates Samuel E. Schoenburg, Maurilio Garcia and Jennifer A. Schaffer filed joint nomination petitions with defendants-appellees the Chicago Board of Election Commissioners (Board), running as a slate of candidates for the member positions open with the Police District Council of the 19th Police District.  Similarly, candidates Darrell Dacres, Deirdre O'Connor and Anna Rubin filed joint nomination petitions with the Board, running as a slate of candidates for the member positions open with the Police District Council of the 20th Police District.  And, candidates Veronica I. Arreola, Edvette W. Jones and Marilyn Pagan-Banks filed joint nomination petitions with the Board, running as a slate of candidates for the member positions open with the Police District Council of the 24th Police District.  Each of these groupings filed more than three times the minimum number of signatures collectively necessary to be on the ballot.

¶ 3    In response, objectors, independently and separately, filed objections to each set of candidates' nominating papers: Horwitch to Schoenburg, Maurilio and Garcia; Arriaga to Dacres, O'Connor and Rubin; and Rose to Arreola, Jones and Pagan-Banks.  Objectors lodged the identical objection, namely, that the candidates' petitions were invalid because the Illinois Election Code (Election Code) and the Chicago Municipal Code (Municipal Code) do not allow for a slate of candidates to file a single set of petitions for nonpartisan offices,

including the nonpartisan offices of member of police district council. The matter proceeded before a hearing officer, who found that the candidates could not run as a slate and, therefore, recommended they be removed from the ballot.

¶ 4     Upon review, however, the Board rejected the hearing officer's recommendation. The Board noted that section 2-80-070(c) of the Municipal Code, which established the nonpartisan police district council offices at issue, is silent as to whether candidates can file slated petitions. (Chi. Muni. Code § 2-80-070(c)). Accordingly, it looked to section 10-3 of the Election Code, and *McNamara v. Oak Lawn Mini. Officers Electoral Bd.*, 356 Ill. App. 3d 961 (2005), which similarly involved objections to a slate of candidates. *McNamara* found that section 10-3 does not allow for independent candidates to file slated petitions, but, because its language was directory and not mandatory, it would not be appropriate to remove slated candidates from the ballot. The Board disagreed with *McNamara*'s reasoning, but concluded its ultimate holding was correct and must be followed. First, the Board found, unlike *McNamara*, that section 10-3's language did allow for candidates to petition as a slate. It examined the language of that section, which states, "nominations of independent candidates for public office *** may be made by such nomination papers signed in the aggregate for each candidate by qualified voters of such district." (10 ILCS 5/10-3). By stating that candidates "may" file nomination papers "signed in the aggregate for each candidate," the Board concluded section 10-3 establishes that candidates are not required to file in the aggregate as a slate, but if they do, then they must each, in the aggregate, have a sufficient number of signatures to qualify for the minimum requirement. In other words, they are not prohibited from petitioning as a slate as long as each candidate in the slate has enough

4

signatures to meet the minimum. And, since each of the candidates in each of the three-candidate slates at issue had more than three times the minimum number of required signatures, the Board held they were entitled to be on the ballots. The Board further noted that should its interpretation be incorrect and should section 10-3 prohibit slated petitions, *McNamara*' ultimate holding--that slated petitions are prohibited but their use does not warrant removal from the ballot because the statutory language used is only directory and not mandatory--still supports keeping the candidates at issue on the ballots.

¶ 5    Following the Board's decision, objectors filed their petitions in the circuit court, which consolidated their cases. After examining section 2-80-070 of the Municipal Code, section 10-3 of the Election Code, and *McNamara*, the court agreed with the Board's decision. Briefly, it, too, noted at the outset that section 2-80-070 does not speak to the issue of slates and, therefore, section 10-3 governs, along with *McNamara*, which interpreted that section. The trial court examined *McNamara* and the facts presented, concluding that, while section 10-3 technically prohibits independent candidates from filing slate petitions, they must be allowed here, as in *McNamara*, because each candidate met the signature requirement if the signature on the joint petitions were divided among them since, again, they filed more than three times the minimum number of signatures collectively necessary. Therefore, the court ordered the names of the candidates to appear on the respective ballots.

¶ 6    The parties agree that the issue upon review is whether candidates for Member of the Police District Council can file joint nominating petitions, and that we are to employ a *de novo* standard to review the decision of the Board. See *McNamara*, 356 Ill. App. 3d at 964 (where there is no factual dispute and court is left to determine whether governing legal

5

provisions were interpreted correctly, Board's decision is reviewed *de novo*); accord *Elam v. Municipal Officers Electoral Bd. for the Village of Riverdale*, 2021 IL 127080, ¶ 13 (the proceeding is in the nature of administrative review; it is the board's decision, not that of the trial court, that is to be reviewed).  For the following reasons, we affirm the Board's decision.

¶ 7        Section 2-80-070, which deals directly with the office of Member of the Police District Council, states:

> "Persons wishing to appear on the ballot as a candidate for District Council shall file a statement of candidacy with the [Board] and submit petitions for nomination; the signature requirements for the petitions for nomination of District Council candidates shall be 0.5% of the total number of registered voters in the District, or a minimum of 25 registered voters in the District, whichever is greater."

§ 2-80-070(c).  This section specifies the number of signatures required by candidates to run for the council, but it does not mention anything about whether candidates can run together on a slated petition.

¶ 8        Because this is a nonpartisan race, we turn, in this silence, to the Election Code, since its provisions "shall apply to nonpartisan petitions to the extent they are not inconsistent with the requirements of such other statutes or ordinances."  10 ILCS 5/10-3.1.  Section 10-3 states:

> "Nominations of independent candidates for public office within any district or political subdivision less than the State, may be made by nomination papers signed in the aggregate for each candidate by qualified voters of such district, or political subdivision, equaling not less than 5%, norm more than 8% *** of the number of

persons, who voted at the next preceding regular election in such district or political subdivision." 10 ILCS 5/10-3.

¶ 9    Statutory construction's primary rule mandates that courts give effect to the intent of the legislature. See *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009). The best indication of this is the language used in the statute itself. See *Gardner*, 234 Ill. 2d at 511. Courts are to give clear and unambiguous terms their plain and ordinary meaning, and are not to use extrinsic aids. See *Andrews v. Metropolitan Water Reclamation District of Greater Chicago*, 2019 IL 124283, ¶24. Nor are court to read into statutes exceptions, conditions or limitations where the legislature did not expressly provide them. See *Andrews*, 2019 IL 124283, ¶24 (we may, however, "consider the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved").

¶ 10    Critically, public policy favors ballot access and, particularly, voters' rights to endorse and nominate the candidates of their choice. See *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997); accord *Sutton v. Cook Cty. Officers Electoral Bd.*, 2012 IL App (1st) 122528, ¶ 10. Where a statute makes clear that an election shall be rendered void if those involved therein fail to perform certain duties that are part of the election process, courts are to enforce it as mandatory. *People ex rel. Meyer v. Kerner*, 35 Ill. 2d 33, 39 (1966). However, when a statute does not expressly state that its election provisions are mandatory or compliance is essential, "the failure to strictly comply, in the absence of fraud or a showing that the merits of the election were affected thereby, is not fatal." *Meyer*, 35 Ill. 2d at 39.

¶ 11    Similar to the instant cause, *McNamara*, wherein two prospective candidates filed joint nomination petitions as independent candidates in a municipal election, analyzed whether

7

independent candidates could do so under section 10-3. The court determined that, under the plain language of that section, they could not, and that each was required to file separate papers. See *McNamara*, 356 Ill. App. 3d at 965. The court interpreted the term "signed in the aggregate for each candidate" in section 10-3 to mean that the signed nomination papers could be combined and viewed as a set to establish the required number of signatures for a particular candidate, not that multiple candidates could be listed on a single set of nomination papers. See *McNamara*, 356 Ill. App. 3d at 965. The court therefore concluded that the two candidates who submitted joint nomination papers were not in compliance with section 10-3. See *McNamara*, 356 Ill. App. 3d at 965.

¶ 12     Having found that the joint nominating petition did not comply with section 10-3, the *McNamara* court then considered the appropriate remedy. In attempting to decipher what the consequence for a failure to abide by the provisions of 10-3, absent any showing of fraud or that the merits of the election would be affected, should be, the court stated it did not know because the statute was silent in that regard. See *McNamara*, 356 Ill. App. 3d at 967. It then reasoned that "[w]hile it seems clear to us that the statute anticipates that independent candidates for various offices in an election will file separate nomination petitions, it may be that the legislature simply did not anticipate what happened in this case. We will not read a remedy into a statute that fails to provide for one, particularly a drastic remedy that deprives a citizen of the right to run for office. [Citation]." *McNamara*, 356 Ill. App. 3d at 967. Accordingly, the *McNamara* court acknowledged the policy favoring the rights of citizens to endorse and nominate the candidate of their choice and cited multiple cases that declined to penalize election law violators. See *McNamara*, 356 Ill. App. 3d at 965 (citing *Lucas*, 175

Ill. 2d at 176; *Welch v. Johnson*, 147 Ill. 2d 40, 56-57 (1992); and *Anderson v. Schneider*, 67 Ill. 2d 165 (1977)). Because section 10-3 did not specifically address a penalty for failing to file individual nomination papers, the *McNamara* court refused to impose one. See *McNamara*, 356 Ill. App. 3d at 966. Instead, the court concluded that, absent fraud or a showing that the merits of the election were affected, the failure to strictly comply with the nomination requirement was not fatal and it directed the electoral board to place the candidates' names on the ballot. See *McNamara*, 356 Ill. App. 3d at 965-66.

¶ 13        We agree with *McNamara*'s holding. Were we also to accept its reasoning, we must find that the plain language of section 10-3 contemplates that each independent candidate will file individual nomination papers. Admittedly, the candidates herein did not. But, the next, and more critical, question is whether the candidates' noncompliance with section 10-3 requires removing their names from the ballot. It is this portion of *McNamara*'s reasoning that we wholly adopt. Section 10-3 does not expressly state, anywhere, that an election will be invalid if a candidate fails to submit an individual nominating petition. Moreover, nothing in the statute indicates that individual nomination papers are an essential requirement. As mentioned earlier, we will not read into the election statute limitations or conditions that the legislature did not express. Again, we are particularly mindful to exercise restraint where, as here, the proposed remedy adversely affects voters' rights to participate in an election. See, *e.g.*, *Lucas*, 175 Ill. 2d at 176.

¶ 14        In the instant cause, the candidates filed joint nomination petitions that included the names of all nine candidates, three petitions each with three-candidate slates. Pursuant to *McNamara*, this was error. However, also pursuant to *McNamara*, the error was not fatal.

9

Objectors here do not allege fraud or that the merits of the election would be affected by the failure to file individual petitions.  Moreover, the record is clear that each of the three slated petitions contained at least three times as many signatures as the minimum requirement, the validity of which were never challenged, and that the statement above the list of candidates on each of these petitions made clear to voters that their signatures stood for the candidates in their slates.  Those who signed knew they were endorsing each slate, and they overwhelmingly used their voices as voters to choose to do so.  Thus, the candidates met the threshold requirements to be on the ballots.

¶ 15          Objectors insist that the Illinois Supreme Court's decision in *Jackson-Hicks v. E. St. Louis Bd of Election Comm'rs*, 2015 IL 118929, overturned *McNamara* and that the prohibition against slates is mandatory, not merely directory.  We disagree.  First, contrary to their insistence, *Jackson-Hicks* does not expressly overturn *McNamara* at all; it does not state as much in any way shape or form, and the two cases stand side by side as good law to this day.  Second, their reliance on *Jackson-Hicks* is unavailing.  That case did not even involve joint nomination petitions or slates of candidates; rather, it involved a mayoral candidate who filed a nomination petition short of the number of valid signatures required to be placed on the ballot.  The crux of our supreme court's decision was its determination that the requirement of having a sufficient number of signatures as specified by statute on the nomination papers was mandatory (not merely directive) and, by failing to meet this mandatory requirement, the candidate wholly failed to meet a threshold requirement.  See *Jackson-Hicks*, 2015 IL 118929, ¶¶ 6-7, 37, 42.  In turn, because "the clear and unambiguous standard adopted by the General Assembly requires compliance with a specific numerical

10

threshold determined according to a specific mathematical formula *** [a] candidate either meets that minimum threshold or does not. There is no close enough." *Jackson-Hicks*, 2015 IL 118929, ¶ 37.

¶ 16    The issue here is distinguishable. We have been asked to consider whether candidates can file joint nomination petitions and be slated together. Unlike the candidate in *Jackson-Hicks*, the candidates here filed joint nomination papers that met the specific numerical threshold of required signatures—the only mandatory component at play here. The failure to submit individual nominating petitions, while error, does not violate a threshold or statutory requirement that would disqualify them.

¶ 17    Accordingly, we follow *McNamara*, as it is the only similar precedent in existence at this time. Notwithstanding that, however, and even were our interpretation of *McNamara* and/or our application of it to the instant cause somehow incorrect, it is of no matter. That is because, more importantly, we further conclude that the Election Code as applied to the candidates here does not prohibit slate petitions. Clearly and plainly stated, neither the language of the Municipal Code nor the language of the Election Code expressly disallows slates.

¶ 18    Again, section 2-80-070 of the Municipal Code is silent with respect to slate petitions in relation to these new police board council positions. However, and again, these member positions are nonpartisan. Section 10-4 of the Election Code governs the form of petitions for candidate for nonpartisan positions. Admittedly, it does not expressly allow for slates. But, it does provide:

"Such petitions shall consist of sheets of uniform size and each sheet shall contain,

11

> above the space for signature, an appropriate heading, giving the information as to
> name of candidate **or candidates** in whose behalf such petition is signed \*\*\*." 10
> ILCS 5/10-4. (Emphasis added.)

In conjunction, the subsequent section of the Election Code, section 10-5, which also governs nonpartisan positions, states:

> "All petitions for nomination shall, besides containing the **names of candidates**,
> specify as to each:
>
>   1. The office **or offices** to which such candidate **or candidates** shall be
>   nominated." 10 ILCS 5/10-5. (Emphasis added.)

¶ 19       As the cardinal rule of statutory interpretation is to give the words chosen by our legislature their plain and ordinary meaning, these applicable provisions make clear to us that the Election Code does, indeed, contemplate the filing of the names of "candidates" for "offices," in the plural, to appear on a single petition sheet for nonpartisan positions. If it did not, it certainly would have been sure to use only singular language. The fact remains, it did not.

¶ 20       The only statutory language, then, that any court has found to technically prohibit candidates from filing joint petitions is, as *McNamara* concluded, in section 10-3 of the Election Code which, as we set out earlier, provides:

> "Nominations of independent candidates for public office within any district or
> political subdivision less than the State, may be made by nomination papers signed in
> the aggregate for each candidate by qualified voters of such district, or political
> subdivision, equaling not less than 5%, norm more than 8% (or 50 more than the

12

minimum, whichever is greater) of the number of persons, who voted at the next preceding regular election in such district or political subdivision in which such district or political subdivision voted as a unit for the election of officers to serve its respective territorial area." 10 ILCS 5/10-3.

As we discussed, the reasoning of *McNamara* turned on the phrase "by nominating papers signed in the aggregate for each candidate," as the court found this is what prohibited independent candidates from being permitted to file nominating petitions as a slate. See *McNamara*, 356 Ill. App. 3d at 965.

¶ 21       Yet, section 10-3 applies to independent candidates; again, as we noted at the outset of this decision, it only applies to nonpartisan candidates through section 10-3.1, which states:

"The provisions of this Article 10 relating to independent candidate petition requirements shall apply to nonpartisan petitions **to the extent they are not inconsistent with the requirements of such other statutes or ordinances**." 10 ILCS 5/3.1.  (Emphasis added.)

It also states, which is most applicable herein, that:

"Petitions for nomination of nonpartisan candidates for municipal offices where the statute creating the municipality or providing the form of government thereof, or the ordinance so providing, pursuant to Article VII of the Constitution, requires election to such office on a nonpartisan basis and does not permit political party nominations (including without limitation Articles 4 and 5 of the Municipal Code) **shall be in conformity with any requirements as to contents and number of signatures specified in such statute or ordinance**." 10 ILCS 5/10-3.1.  (Emphasis added.)

13

¶ 22　　　　This inherently brings us back, full circle, to section 2-80-070 of the Municipal Code, which encapsulates the signature requirements for nonpartisan candidates seeking the office of member of the police district council. Again, that section requires that signatures "for the petitions for nomination of District Council candidates shall be 0.5% of the total number of registered votes in the District, or a minimum of 25 registered voters in the District, whichever is greater." Obviously, this provision does not contain the "in the aggregate for each candidate" language that is present in section 10-3 of the Election Code—the section that *McNamara* held disallowed joint petitions. Accordingly, section 10-3 of the Election Code's method of calculating the minimum number of signatures is inconsistent with section 2-80-070 of the Municipal Code's method of calculating the minimum number of signatures. If, then, section 10-3 of the Election Code, which applies to independent candidates, were applied to the nonpartisan candidates here running for police district council, that would create a different minimum number of signatures required than if section 2-80-070 of the Municipal Code were applied.

¶ 23　　　　Ultimately, this cannot be. By the terms of section 10-3.1, section 10-3 of the Election Code can only apply to nonpartisan petitions "to the extent they are not inconsistent with the requirements of such other statutes or ordinances." 10 ILCS 5/3.1. Section 10-3's "in the aggregate for each candidate" signature requirement language would be inconsistent with section 2-80-070's "0.5% of the total number of registered votes in the District, or a minimum of 25 registered voters in the District, whichever is greater" signature requirement language. Therefore, section 10-3 of the Election Code cannot apply to these candidates, who are required to meet their own particular signature requirements pursuant to section 2-

80-070 of the Municipal Code. And, if it is not applicable, then this means that the only statutory language in the Election Code that any court, namely, *McNamara*, has found to prohibit slate petitions would, likewise, not be applicable.

¶ 24 To conclude, we reiterate that public policy favors ballot access, and we "tread cautiously" when construing statutory language that impacts voters' rights to endorse and nominate the candidates of their choice. See *Lucas*, 175 Ill. 2d at 176. Significantly, "[w]e are not in favor of whittling away at this policy by elevating form over substance." *Sutton*, 2012 IL App (1st) 122528, ¶ 10. Barring the printing of these candidates' names on the respective ballots at issue would do precisely that. Ultimately, whichever reasoning is applied—that of *McNamara* or the conclusion that section 10-3 of the Election Code really does not apply here—each candidate here obtained the requisite minimum signatures to run for Member of Police District Council in their districts pursuant to the main requirement of section 2-80-070 of the Municipal Code. They satisfied the purpose underlying the requirement for obtaining signatures, and each proposed slate filed more than three times the minimum number of signatures collectively necessary to be on their respective ballots. With no express provision in the applicable Municipal Code nor in the Election Code prohibiting joint petitions, we hold that the candidates should remain on the ballot.

¶ 25 The decision of the Board allowing the candidates' names to appear on the ballot for the general municipal election for Member of Police District Council for Chicago Police Districts 19, 20 and 24 to be held on February 28, 2023 is affirmed.

¶ 26 Affirmed.